## BALCH *v.* CITY OF DETROIT.

1. STATUTES—CONDEMNATION PROCEEDINGS.

   Condemnation proceedings which had become final by the confirmation of the verdict therein, and the expiration of the time to appeal, without an appeal by either party, before the enactment of Act No. 467, Local Acts 1895, providing that all proceedings to take private property on the part of the city of Detroit should be prosecuted under that act, are not affected thereby.

2. SAME—ENFORCEMENT OF JUDGMENT—MANDAMUS.

   A judgment which had thus become final may be enforced by *mandamus* directing the city to pay the amount awarded from funds already in its hands, or, if that cannot be done, to proceed to levy an assessment for that purpose, under the general law in force before the passage of such special act.

*Certiorari* to Wayne; Frazer, J.   Submitted April 21, 1896.   Decided May 12, 1896.

*Mandamus* by George W. Balch and another against the city of Detroit and others to compel the payment of an award for land condemned for street purposes.   From an order denying the writ, relators bring *certiorari*. Reversed.

*Gray & Gray* (*Edwin F. Conely*, of counsel), for relators.

*John J. Speed*, for respondents.

HOOKER, J. Previous to 1895, the right to institute proceedings for taking private property for street and highway purposes, on behalf of the public, was vested in city councils and boards of supervisors under a general law, viz., Act No. 124 of the Public Acts of 1883, and an amendatory act, numbered 48, of the Public Acts of 1887. At its 1895 session, the legislature passed an act, applicable only to the city of Detroit, which, while in the main it followed the provisions of the pre-existing general law, differed from it in important particulars. See Act No. 467, Local Acts 1895. Its first section provided that all proceedings *to take private property, on the part of the city of Detroit*, should be held and prosecuted under the provisions of said act; and its last section repealed all acts and parts of acts in conflict therewith. It contained no saving clause whereby the procedure in pending causes was pointed out. This act was passed June 4, and took effect on September 1, 1895, and was considered in the case of *City of Detroit* v. *Chapin*, 108 Mich. 136, where it was held that it terminated a proceeding commenced three days before it took effect, and which had not been submitted to a jury.

We have now before us a case where a verdict was rendered in such a proceeding on February 2, 1895, and in which a judgment of confirmation was entered on February 19, 1895, from which neither party appealed. The council took no steps to provide for the payment of the sum awarded by the jury, and has not sought to take possession of the land. It now claims that the award was excessive, and that there is no law under which it can raise the necessary fund to pay it. With the first question we have nothing to do, the verdict and judgment of confirmation being made final by section 11, Act No. 124, Pub. Acts 1883.

Counsel for relators ask a *mandamus* directing that the common council pay the award from funds now in its hands, or, if that cannot be done, it provide, in the next annual tax levy, a sum sufficient for the purpose, and pay the same to the relators as soon as it shall be collected. In the circuit court the writ was denied, and the proceeding is before us upon *certiorari*.

It is contended upon relators' behalf that the confirmation of the award gave them a vested right to the compensation, although the title or right to use the land could not vest in the public until payment should be made. Such was the view taken under the statute of New York in the case of *People* v. *Common Council of City of Syracuse*, 78 N. Y. 60, where it is stated that the English rule is much more favorable to property owners, in that the municipality is bound from the time of the statutory notice of an intention to condemn. The case cited holds that after the confirmation, and expiration of the statutory period, without appeal, the award became binding and conclusive upon both parties, and that the relator then had a legal right to compel the performance of the duties enjoined by the statute upon the common council, for the assessment and collection of the amount awarded, under the statute. Such, we think, is the effect of our own statute. Act No. 124, § 11, Pub. Acts 1883.

It seems to be conceded that this would be the effect of our statute were it not for the act of 1895, which is said to repeal the pre-existing act so far as Detroit is concerned, and therefore to preclude the levying of an assessment under its provisions; while the new act requires the designation of the assessment district by the council before the trial, and gives to all within it a right to intervene and defend, which manifestly cannot be done in this case. As stated in the case of *City of Detroit* v. *Chapin*, the provisions contained in the later act requiring the early designation of the assessment district, and notice thereof, with the obvious purpose of enabling the residents of such district to be heard upon the questions of the necessity

and cost of condemnation, were important changes in the law, and, when taken in connection with decisions of this court theretofore made, and the sweeping repeal contained in the last section, without any saving clause, had the effect to discontinue pending cases, rendering it necessary for new proceedings to be commenced, which should afford an opportunity to those subject to assessment to be heard before judgment. But the construction of the former law cannot depend upon one passed 12 years later; and, to our mind, section 11 is conclusive that the judgment should be final and binding upon all interested therein, which, under the case of *Borgman* v. *City of Detroit*, 102 Mich. 263, includes the public, the landowner, and the taxpayer. In cases which had gone to judgment that had become final by confirmation and failure to appeal at the time the law took effect, the landowner's right to compensation had become vested, and he is as much entitled to his compensation now as he would have been had the law of 1895 not been passed. We must therefore conclude that the relators have a right to insist that the judgment of condemnation shall stand, and that they be paid the amount adjudged in their favor.

Both statutes permit local assessments for such judgments, and do not prohibit assessment in full or in part upon the city at large. See Act No. 467, § 2, Local Acts 1895; Act No. 124, § 15, Pub. Acts 1883. There is therefore an opportunity for the claim that, if the change in the law precludes a local assessment, there is nothing to prevent an assessment upon the city at large. In fact, that would seem to be the only method if, as contended, there can be no local assessment. We cannot be oblivious to the fact that the opening of streets and highways are generally matters of local interest and benefit, and not of general interest or benefit; and that, while the highways belong to the public, they are seldom paid for by the whole public or State, but by some subdivision, such as a county, township, city, or district, and our laws are framed upon such theory. In cities, especially, it is com-

mon for these proceedings to be instigated by those having lands to improve or bring into market; and we doubt the intention of the legislature to impose upon the inhabitants of the entire city of Detroit the burden of paying judgments already rendered in these cases.   Section 1 of Act No. 467 is pointed in its requirement that the proceedings which the city shall institute and prosecute for the purpose of *taking* property for the use of the public shall be held and prosecuted under the provisions of this act, and no other; and, to the extent of relieving the public where the land has not been taken, we have held that the former act could not apply, it being plainly prohibited. But, where the land has been taken,—*i. e.*, condemned,— there is nothing in the later law that indicates an intention to annul the judgment, even if the legislature could lawfully do so; nor is there any indication of an intention to impose the burden upon the city or State.   On the contrary, section 2 indicates that it is still the policy to permit local assessments.

We think that the assessment may yet be made in conformity to the general act, as that is not inconsistent with the provisions of the later act.   The writ will therefore issue requiring the respondents to pay the amount of such award, or, if the necessary funds have not been provided, to take the necessary measures to levy, collect, and pay the same.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. LONG, C. J., did not sit.