[L. A. No. 2106.  In Bank.—August 27, 1908.]

THE PEOPLE OF THE STATE OF CALIFORNIA, by U. S. Webb, Attorney-General, upon the Complaint of the Bank Commissioners of the State of California, Respondent, v. BANK OF SAN LUIS OBISPO (a Corporation), et al., Appellants.

BANK COMMISSIONERS ACT OF MARCH 24, 1903—CONSTITUTIONAL LAW — SEQUESTRATION OF PROPERTY OF INSOLVENT BANK — ACTION BY ATTORNEY-GENERAL.—Admitting the unconstitutionality of the provisions of section 10 of the Bank Commissioners Act of March 24, 1903, in so far as it attempts to authorize the bank commissioners, upon their own determination that it is unsafe for a banking corporation to transact business, made without notice, to take such control of the corporation and of its property and effects as is necessary to prevent waste or diversion, and to hold such possession pending determination of the action to be thereupon instituted, still the right of the attorney-general to bring an action under that act to obtain a decree declaring the corporation to be insolvent, and ordering it into involuntary liquidation, is not dependent upon the validity of the provisions as to seizure and sequestration of the property of the corporation by the commissioners. The commissioners are not required to take any possession or control of any property of the corporation as a condition precedent to a notification to the attorney-general of their determination that it was unsafe for the corporation to continue business sufficient to require him to immediately commence the action provided for by the act.

ID.—CONSTITUTIONAL QUESTION NOT DECIDED.—Whether the provisions of section 10 of that act, providing for the seizure and sequestration of the property of the corporation, is or is not constitutional is not decided.

ID.—PROVISIONS OF CIVIL CODE AFFECTED BY ALL SUBSEQUENT CONFLICTING LAWS.—Any provision of the Civil Code in force at the time of the adoption of the constitution is subject to a general law necessarily in conflict therewith subsequently passed, wherever that law may be placed, whether in one of the codes or in a separate act, and there is nothing implying the contrary in section 1 of article XXII of the constitution, declaring that all laws in force at the time of its adoption, not inconsistent therewith, shall remain in full force and effect until altered or repealed.

ID.—BANK COMMISSIONERS ACT APPLICABLE TO ALL BANKS.—The Bank Commissioners Act of March 24, 1903, is applicable to every banking corporation doing business in this state, whenever incorporated.

ID.—COMPLAINT IN ACTION UNDER ACT—ALLEGATION OF INSOLVENCY— DECISION OF COMMISSIONERS.—The complaint in an action under

that act to have a banking corporation adjudged insolvent and to be ordered into involuntary liquidation, which alleged that the bank commissioners did unanimously find and determine that said corporation was insolvent and unable to pay its obligations from its own means as such obligations became due and payable in the ordinary course of business, and which further alleged the fact of its insolvency, sufficiently avers the fact that the commissioners had unanimously decided that "it is unsafe" for the bank "to continue business," within the meaning of the act.

Id.—Act Supersedes Insolvency Act.—Section 10 of the Bank Commissioners Act was intended, so far as banking corporations are concerned, to supersede the provisions of the general Insolvency Act, and to be applicable in all cases of insolvency of such corporations.

Id.—Unanimous Decision of Commissioners—Vacancy in Office of One Commissioner.—Where there is a vacancy in the office of- one of the four bank commissioners provided for by the act, the remainder, constituting a majority of the commission, in the absence of provision to the contrary, may exercise the powers and perform the duties allotted by the law, and may make the unanimous decision that "it is unsafe" for the bank "to continue business."

Id.—Title of Act Is Sufficient—Powers of Attorney-General.— The Bank Commissioners Act of March 24, 1903, which is entitled "An act creating a board of bank commissioners and prescribing their duties and powers," in so far as it purports to give authority to the attorney-general to bring or prosecute the action to force a bank into involuntary liquidation, is not in conflict with section 24 of article IV of the constitution, in omitting to express in its title the duties, authority, or power of the attorney-general. The title of the act sufficiently expresses its subject and is sufficiently general in its scope.

Id.—Appointment of Receiver Follows Adjudication of Insolvency. —In such an action by the attorney-general, the court is expressly authorized to appoint a receiver by the terms of the act, in the event of a finding of the insolvency of the corporation, without any issue made by the pleadings in that behalf, and without any specific prayer for such relief, and without further notice. The act itself constituted full notice that such an appointment would be made in the event of a determination of insolvency by the court.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.  E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

James L. Crittenden, for Appellants.

U. S. Webb, Attorney-General, George A. Sturtevant, Assistant Attorney-General, and R. C. Van Fleet, Deputy Attorney-General, for Respondent.

ANGELLOTTI, J.—This is an appeal by the defendants, a banking corporation, and its directors, from a judgment given in a proceeding instituted under the provisions of an act entitled "An act creating a board of bank commissioners and prescribing their duties and powers," approved March 24, 1903 (Stats. 1903, p. 365), as amended March 20, 1905 (Stats. 1905, p. 304), to obtain a decree declaring defendant corporation to be insolvent, ordering it into involuntary liquidation, and restraining it from the transaction of any further business except for the purpose of liquidation. Judgment was given to this effect, and by the judgment one Neil Stewart was appointed receiver of said corporation, and the bank commissioners were directed to deliver to him all the money, property, and effects of said corporation which had come into their hands. The appeal is on the judgment-roll alone.

Section 10 of the act of March 24, 1903, is, so far as material here, practically the same as section 11 of the former act on the same subject, that of March 30, 1878 (Stats. 1877-8, p. 740), as amended in 1895 (Stats. 1895, p. 172). It provides that if the bank commissioners, on examination of the affairs of any banking corporation, shall find that it has been guilty of violating its charter, the laws of this state, or any of the provisions of the act, or is conducting business in an unsafe manner, they shall direct a discontinuance of the illegal and unsafe practices, and a conformity with the requirements of the law and charter. It then provides: "And if such corporation shall refuse or neglect to conform with such requirements before the expiration of the time in the order specified, or if it shall appear to said commissioners and they shall unanimously decide that it is unsafe for any such corporation to continue to transact business, it shall be the duty of the commissioners immediately to take such control of such corporation, and all the property and effects thereof, as may be necessary to prevent waste or diversion of assets, and to hold possession of the same until the order of court hereinafter mentioned, and to immediately notify the governor and the attorney-general of their action; and it is hereby made the duty of the attorney-

general, upon receiving such notification, to immediately commence suit in the proper court against such corporation, and all the directors or trustees thereof, to enjoin and prohibit them from the transaction of any further business. If, upon the hearing of the case, the court shall find that such corporation is solvent and may safely continue business, it shall dismiss the action, and order that the corporation be restored to the possession of the property, but if the court shall find that it is unsafe for such corporation to continue business, or that such corporation is insolvent, said court shall by its decree order said corporation into involuntary liquidation, and shall issue the injunction applied for, and shall cause the same to be served according to law, and shall order the commissioners to surrender the property of the corporation in their possession to a receiver appointed by the court for the purpose of liquidation in such proceeding, under the order and direction of the court."

This action was commenced by the attorney-general on February 1, 1906. The findings, based on appropriate allegations in that behalf in the complaint, establish the following facts. Defendant corporation was organized on August 28, 1873, and has ever since been engaged in the general banking business at San Luis Obispo, its principal place of business. At all times mentioned in the complaint, Messrs. Silver, Blackstock, and Dunsmoor were the only bank commissioners holding office under the act, the act providing that there shall be four such commissioners. In November, 1905, the bank was examined by said commissioners, and they determined that it was conducting business in an unsafe manner, and ordered certain changes in the conduct of the business. On January 24, 1906, said bank commissioners, without notice to the corporation or its board of directors, found and determined that the corporation had not discontinued its unsafe practices, and unanimously found and determined that said corporation was insolvent and unable to pay its obligations from its own means, as such obligations became due and payable in the ordinary course of business. On the same day, said commissioners, without the consent of the corporation, took immediate control of said bank and all the property and effects thereof, and have ever since held the same. On the same day they notified the governor and the attorney-general of their action. Said bank is, and

was, at all times after January 10, 1906, insolvent and unable to pay its obligations from its own means, as such obligations become due and payable in the ordinary course of business.

The principal claim made by defendants is that the provision of section 10, authorizing the bank commissioners, upon their own determination that it is unsafe for the corporation to transact business, made without notice, to take such control of the corporation and of its property and effects as is necessary to prevent waste or diversion, and to hold such possession pending determination of the action to be thereupon instituted, is in violation of various provisions of the constitution of the United States and that of this state; that the right of the attorney-general to bring any action under the act is absolutely dependent on the validity of the provisions as to seizure and sequestration of the property of the corporation by the commissioners and can be exercised only after a valid seizure, and that, therefore, this action must fail.

We are satisfied that no such result would follow a conclusion that the portion of the section thus assailed is void. Ever since the adoption of the act of March 30, 1878 (Stats. 1877-78, p. 740), it has been the law in this state that the question of the solvency or safety of a banking institution shall be determined in an action to enjoin the doing of further business brought by the attorney-general upon notice from the bank commissioners, and that in such action, in the event of a finding of insolvency or that it is unsafe for the institution to further continue business, the judgment shall prohibit the doing of further business, and the affairs of the institution shall be wound up under the supervision of the court. In section 11 of the original act it was provided that the attorney-general "shall immediately commence" such action upon receiving a communication from the bank commissioners. By an amendment approved March 10, 1887 (Stats. 1887, p. 90), the section was changed so as to provide that when any such corporation refused or neglected to comply with the order of the commissioners to discontinue illegal and unsafe practices, or whenever it appeared to the commissioners that it is unsafe for it to continue business, the commissioners shall notify the attorney-general of such fact, "who, after examination, in his discretion, may commence suit," etc. On March 26, 1895, the act of March 30, 1878, was again amended by inserting in section

what is almost *verbatim* the portion of section 10 of the act of 1903 that is here assailed. As so added by the amendment to the act of March 30, 1878, it was nothing but a collateral provision for the safe keeping of the property of the bank for the benefit of all concerned, pending the proceeding authorized by the act, and was not intended in any degree to affect the right of the attorney-general to bring an action upon notice from the commissioners of their determination that it was unsafe for a banking corporation to continue to transact business. The amendment was undoubtedly considered necessary in view of the decisions of this court that the proceeding was purely statutory, and that under the act as it originally existed, no injunction could issue until after hearing (*Peoples' Home Sav. Bank* v. *Superior Court,* 103 Cal. 27, [36 Pac. 1015]), and there were no means provided by which the property could be guarded against waste and diversion pending the litigation. It is true that the amendment made it the duty of the attorney-general to commence suit only upon being notified by the commissioners "of their action" in the premises, which, of course, included not only their determination, but also their taking possession of the property where they had done so, but we do not think it is open to serious question that they were not required to take any possession or control of any property of the corporation as a condition precedent to a notification to the attorney-general of their determination that it was unsafe for the corporation to continue business sufficient to require him to immediately commence the action provided for by the act. So far as the attorney-general was concerned, the important thing was that the commissioners had made the required determination as to the safety of the bank, and notified him thereof. Thereupon his duty and power to commence an action arose, and it was absolutely immaterial in this regard whether the commissioners had attempted to prevent waste or diversion by a compliance with the provision as to taking possession. When the act of March 30, 1878, was revised and re-enacted by the act of March 24, 1903, that portion of section 11 relating to the duty of the bank commissioners and the attorney-general in such a case, was adopted practically word for word as a part of section 10, notification to the governor being required in addition to that given to the attorney-general. It means the same thing there that it did when made by amendment a por-

tion of the act of March 30, 1878. If it be invalid, its invalidity would not affect the remainder of the act. Therefore, it is not at all essential to the upholding of the judgment herein, that the provision of the section as to taking possession of the property of the bank by the commissioners be held a constitutional law. If invalid, the only consequence is that the defendants have, without warrant, been deprived of the possession of their property during the pendency of this litigation, a matter which could not affect the result in this action, and for which invasion of their rights their remedy must be found elsewhere. All that is necessary to sustain the action and the judgment in this case is that it appeared to the commissioners and that they unanimously decided that it was unsafe for defendant corporation to continue to transact business, that they notified the governor and the attorney-general of their action in the matter, that he thereupon commenced this action, and that as a matter of fact, defendant corporation was insolvent.

Eliminating the question of the constitutionality of the provision assailed, the objections made to the judgment are absolutely without merit.

It is urged that the act under consideration is not applicable to the defendant corporation, for the reason that it was organized and received its charter on August 28, 1873, which was prior to the adoption of the substantially similar act of March 30, 1878. The claim is that to hold legislation of this kind applicable to a corporation organized prior to its adoption would be in violation of section 1 of article XXII of the constitution, declaring that all laws in force at the adoption of the constitution, not inconsistent therewith, shall remain in full force or effect until altered or repealed by the legislature, the claim as stated being that as the Civil Code of the state prescribes certain rights and powers of the corporation at the time of the adoption of the constitution, such rights can be affected only by a modification or amendment of the Civil Code itself, and that a general act adopted by the legislature, "not made as amendments to the Civil Code," can have no such effect. Of course, there is nothing in this claim. Any provision of the Civil Code is subject to a general law necessarily in conflict therewith subsequently passed, wherever that law may be placed, whether in one of the codes or in a separate act, and there is nothing in the constitutional provision relied on imply-

ing otherwise. No reason is apparent to us why the act of March 24, 1903, is not applicable to every banking corporation doing business in the state, whenever incorporated.

It is claimed that the complaint does not state facts sufficient to constitute an action, in that it did not allege that the bank commissioners unanimously decided that "it is unsafe" for the bank "to continue business," which is the language of the act, the complaint alleging in this behalf simply that "said bank commissioners . . . did further unanimously find and determine that said bank of San Luis Obispo, a corporation as aforesaid, was insolvent and unable to pay its obligations from its own means as such obligations become due and payable in the ordinary course of business," and further alleging the fact of such insolvency. We have no doubt that this was a sufficient allegation under the act, an allegation of a determination by the commissioners of what was equivalent to a finding that it was unsafe for the bank to continue business. It is true that the phrase "unsafe .... to continue to transact business" as used in the act is broader than the term "insolvent," and that a finding that it is unsafe for a banking corporation to continue business does not necessarily mean that it is insolvent. But the converse of this is not true. The act clearly contemplates that it is unsafe for an insolvent banking corporation to continue business, and that a determination by the commissioners that such corporation is insolvent is equivalent to a finding that it is unsafe for it to continue business. This is shown by the subsequent provision that "if upon the hearing of the case the court shall find that such corporation is solvent *and* may safely continue business, it shall dismiss the action, . . . , but if the court shall find that it is unsafe for such corporation to continue business, *or* that such corporation is insolvent," it shall order it into involuntary liquidation, etc. As has been uniformly held by this court, the section of the act under consideration was intended, so far as banking corporations are concerned, to supersede the provisions of the general Insolvency Act (see *Crane* v. *Pacific Bank,* 106 Cal. 64, 70, [39 Pac. 215]), and to be applicable in all cases of insolvency of such corporations.

As has been seen, the statute requires that the commissioners "shall unanimously decide," etc., and the act provides that there shall be four bank commissioners, to be appointed by the

governor. It appearing that during all the times mentioned there was a vacancy as to one of said commissionerships, and that consequently there were only three commissioners in office, it is urged that there could be no "unanimous" decision of the kind called for by the act. We do not think the act should be construed as meaning that a vacancy in the office of one of the commissioners should suspend the power of the commission in this important matter. As long as the commission had sufficient members to be an effective body at all, which, in the absence of provisions to the contrary, must be the case wherever there are in office a majority of the requisite number, it may exercise the powers and perform the duties allotted by the law, and when the statute provides that if they "shall unanimously decide," etc., they may do certain things, it means no more than that if those then holding the office of bank commissioner, if at least three in number, unanimously so decide, they may then do the thing specified.

It is claimed that the act is unconstitutional in so far as it purports to give any authority to the attorney-general to bring or prosecute this action, for the reason that "the title of the act does not mention duties, authority, or power of the attorney-general," and section 24 of article IV of the constitution provides that every act shall embrace but one subject, which shall be expressed in its title, and that any act shall be void as to any subject embraced therein which is not expressed in its title. The title of the act of March 24, 1903, is the same as that of March 30, 1878. In *People* v. *Superior Court*, 100 Cal. 105, [34 Pac. 492], section 11 of the act of 1878, corresponding to section 10 of the act of 1903, providing for such an action by the attorney-general, was assailed on various grounds, one being that the title did not sufficiently express the subject-matter of said section. The court said: "We think that the title of the act sufficiently expresses the subject of the act and is sufficiently general in its scope. It is not necessary that the title to the act should embrace an abstract of its contents. (*Abeel* v. *Clark*, 84 Cal. 226, [24 Pac. 383]; *Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251].)" We see no reason to doubt the correctness of this ruling.

It is claimed that the appointment of a receiver without any issue made by the pleadings in that behalf, and without any prayer for such relief, and without notice, was erroneous. As

we have seen, the act in terms provides that the court in such an action, brought "to enjoin and prohibit them from the transaction of any further business," if it finds that the corporation is insolvent, "shall order the commissioners to surrender the property . . . to a receiver appointed by the court for the purpose of liquidation in such proceeding" etc.  This authorized the court to appoint the receiver as a part of the relief sought by the action, in the event of a finding of insolvency, without any allegation of the necessity therefor in the complaint.  The appointment of a receiver for purposes of liquidation was a part of the method provided by the act for the winding up of the affairs of the corporation, and, under the terms of the act, necessarily followed the adjudication of insolvency.  It cannot be said that this is a case of the appointment of a receiver without notice to the corporation.  The act itself constitutes full notice that such an appointment will be made in the event of determination of insolvency by the court in an action wherein the corporation is a party, and as to which it has notice and an opportunity to defend.

The foregoing are all the objections made by appellants to the judgment that merit consideration, except such as go to the question of the validity of the provision as to the taking such control by the commissioners prior to suit of the corporation and its property and effects as may be necessary to prevent waste or diversion, and the holding of such possession pending the litigation.  As said before, we do not consider it essential to an affirmance of the judgment that this provision should be upheld, and a consideration of these objections is therefore unnecessary.

We do not desire, however, to be understood as intimating that we doubt the validity of the provision.  Our failure to consider the question of its validity is due to the fact that, as a general rule, we deem it better to decide constitutional questions only where their decision is essential to a disposition of a pending proceeding.  The provision in question has been a part of our law ever since March 26, 1895, and so far as we are advised no question has ever been made as to its validity except as the same has been made in this case.  In view of the well-settled doctrine that the business of banking is a proper subject of legislative control by the state in the exercise of what is known as the police power, and in view of the de-

cisions as to what constitutes the judicial power that is vested exclusively in the courts under our constitution, and what constitutes due process of law under our federal and state constitutions, we are not strongly impressed by the argument of learned counsel for defendant against the validity of this provision, but as already stated, we consider it preferable not to decide the question in a case where such a decision is clearly unnecessary.

The judgment is affirmed.

Shaw, J., Henshaw, J., Lorigan, J., Sloss, J., and Beatty, C. J., concurred.

Rehearing denied.