[L. A. No. 2384.  In Bank.—December 28, 1910.]

THE PEOPLE etc., by U. S. Webb, Attorney-General, Respondent, v. BANK OF SAN LUIS OBISPO (a Corporation), et al., Appellants.

REPEAL OF STATUTE PENDING LITIGATION—FINALITY OF JUDGMENT.—As a general rule, when a cause of action is founded on a statute, a repeal of the statute before final judgment destroys the right of action, and a judgment is not final in this sense so long as the right of exception thereto remains.

ID.—REPEAL OF STATUTE AFTER JUDGMENT BECOMES FINAL—REPEAL PENDING APPEAL FROM ORDER REFUSING NEW TRIAL.—Where a judgment has been affirmed on a direct appeal therefrom, and has by such affirmance become final during the existence of the statute supporting it, and has been in the process of execution within the law, and rights have arisen by virtue of such execution of the judgment, the repeal of the statute supporting the judgment, pending an appeal from an order denying a new trial in the action in which the judgment was rendered, without *supersedeas* or stay-bond, does not have the effect to destroy the judgment.

ID.—EFFECT OF MOTION FOR NEW TRIAL.—A motion for a new trial, in the absence of an order of the court to that effect, does not stay or suspend the operation of a final judgment. An action, under section 1049 of the Code of Civil Procedure, is to be deemed pending while an appeal from the judgment is pending, or until the time for such an appeal has expired; but when the judgment upon appeal has been determined by an affirmance of the judgment, or when the time for appeal has expired, the judgment is admissible in evidence as *res adjudicata* and to raise an estoppel in bar of the action.

ID.—REPEAL PENDING APPEAL FROM JUDGMENT.—When pending a direct appeal from a judgment, the law which alone will support it is repealed, the appellate court will not proceed further with the litigation, since it must pronounce a judgment and can pronounce it only under the authority of existing law.

ID.—REPEAL PENDING APPEAL FROM ORDER REFUSING NEW TRIAL.—In the case of appeal from an order refusing a new trial, where no stay has been granted and where the judgment has become a finality, the decision which the appellate court renders is not upon the judgment appealed from, but upon the order appealed from, and while the effect of its reversal of the order will be necessarily the setting aside of the judgment, this is but an incident of the ruling which it makes, which ruling goes not at all to the sufficiency or finality of the judgment, but only as to whether the judgment was fairly given.

CLIX Cal.—5

ID.—NEW TRIAL PROCEEDINGS DO NOT SUSPEND JUDGMENT.—Under the system in this state, the appeal from an order denying a new trial is a separate and independent appeal, which, if prosecuted in time, may be taken after the judgment has become final. Excepting when ordered by *supersedeas* or permitted by stay-bond, it in no way suspends the judgment nor interferes with its finality.

ID.—BANKING ACT OF 1903—REPEAL AFTER FINAL JUDGMENT AND PENDING APPEAL FROM ORDER REFUSING NEW TRIAL.—Where a judgment rendered under the Banking Act of 1903, declaring a defendant bank insolvent and ordering it into involuntary liquidation, had 'been affirmed on direct appeal therefrom and thus become final, the subsequent repeal of such statute by the Banking Act of 1909, pending an appeal from an order refusing a new trial of the action in which the judgment was rendered, without *supersedeas* or stay-bond, does not have the effect to destroy the judgment, nor necessitate the dismissal of the action in which it was rendered.

ID.—BANKING ACT OF 1903 IS CONSTITUTIONAL.—The constitutionality of the Banking Act of 1903 is upheld, for the reasons stated in the opinion in *People* v. *Bank of San Luis Obispo,* 154 Cal. 194.

ID.—EVIDENCE—FINDING OF INSOLVENCY OF BANK.—Upon a review of the evidence, it is held sufficient to sustain the finding of the insolvency of the defendant bank.

APPEAL from an order of the Superior Court of San Luis Obispo County refusing a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

James L. Crittenden, for Appellants.

U. S. Webb, Attorney-General, and R. C. Van Fleet, Deputy Attorney-General, for Respondents.

HENSHAW, J.—Under the Banking Act of 1903, (Stats. 1903, c. 266), action was begun in the name of the people of the state of California by the attorney-general, as contemplated by the provisions of the act, for a decree declaring the defendant Bank of San Luis Obispo insolvent, ordering it into involuntary liquidation and restraining it from the transaction of a banking business. This action proceeded to judgment in accordance with the complaint of the People and a receiver was appointed by the court to administer its affairs in liquidation. On appeal to this court the judgment of the trial court was in all respects affirmed (*People* v. *Bank of San*

*Luis Obispo,* 154 Cal. 194, [97 Pac. 306]) and this judgment became final in September, 1908. On June 19, 1908, the trial court denied the defendant bank's motion for a new trial and from this order an appeal was taken to this court. Pending the decision on this appeal from the trial court's order refusing to grant the motion for a new trial, the Banking Act of 1903, (Stats. 1903, c. 266), under the authority of which this action was prosecuted and these proceedings had, was repealed by the Banking Act of 1909, (Stats. 1909, c. 76), which latter act made no provision for continuing in force any ·pending proceedings or litigation under the repealed act.

The Bank of San Luis Obispo now moves this court to vacate and set aside the judgment given against it, and to direct the trial court to dismiss this action upon the ground that the repeal of the Banking Act of 1903 put an end to all litigation pending under it, and that within the meaning of the law the action of the People of the State of California against the Bank of San Luis Obispo was litigation pending and undetermined. The principle which appellant invokes has thus been stated: "When a cause of action is founded on a statute, a repeal of the statute before final judgment destroys the right, and a judgment is not final in this sense so long as the right of exception thereto remains." (1 Lewis' Southerland, Statutory Construction, 2d ed., p. 285.) And, says 36 Cyc., sec. 1228): "As a general rule, the repeal of a statute without any reservation takes away all remedies given by the repealed statute and defeats all actions pending under it at the time of its repeal. The rule is especially applicable to the repeal of statutes creating a cause of action and providing a remedy not known to the common law, or conferring jurisdiction where it did not exist before, and is carried to such extent as to abate proceedings pending upon appeal after verdict in favor of plaintiff. A suit, the continuance of which is dependent upon the statute repealed, stops where the repeal finds it." But a consideration of the leading adjudications becomes necessary to determine the precise meaning of the language thus employed—how broad may be its scope and to what extent the principle is carried.

In *Surtees* v. *Ellison,* 9 Barn. & Cress. 752, the question was whether the evidence of trading which was sufficient to have supported the judgment of bankruptcy under the act of 5th

George II, would support a commission in bankruptcy issued if all previous statutes had been repealed and the controlling statute was that of 6th George IV. The court of Kings Bench held that the acts must be those contemplated by the existing statute, in this connection Lord Tenterden saying: "It has been long established that when an act of parliament is repealed, it must be considered, except as to transactions past and closed, as if it had never existed." And to the same effect is *Key* v. *Goodwin,* 5 Moore & Payne, 341, where, the question being similar, Lord Chief Justice Tindal declared: "I take the effect of repealing a statute to be to obliterate it as completely from the records of parliament as if it had never passed, and that it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and concluded whilst it was an existing law." *Rex* v. *Justices of London,* 3 Burrow, 1456, was an application for *mandamus* to require the justices to proceed in a matter pending before them after the act regulating the proceeding had been repealed. The matter was regularly before them for consideration and had by them been adjourned without decision until a day after the repealing act took effect, whereupon they refused further to proceed. The court found the case to be one of great inconvenience and great hardship. "The legislature had the whole affair under their consideration and they have not thought fit to reserve any jurisdiction to the justices after the 19th of November, 1761. Therefore Lord Mansfield was very clear, and all the rest of the court concurred with him, that no jurisdiction now remains in the sessions."

In *United States* v. *Schooner Peggy,* 5 U. S. 102, [2 L. Ed. 49], the schooner Peggy was seized as a prize, and by decree of the circuit court condemned and forfeited. An appeal was taken to the supreme court of the United States. While the appeal was pending a treaty was entered into between the United States and France, whereby property not *definitely condemned* was to be restored to the original owner. Chief Justice Marshall held that the pending appeal forbade the conclusion that the property had been definitely condemned since the judgment of condemnation had been appealed from and was undecided at the time when the treaty took effect; that, therefore, in contemplation of the treaty, the property

was not definitely condemned and should be restored, the chief justice saying: "It is, in the general, true that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not, but if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed or its obligation denied. . . . In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside." In the *Schooner General Pinkney* v. *United States,* 9 U. S. 281, [3 L. Ed. 101], the schooner and its cargo had been condemned for violation of an act prohibiting intercourse with certain designated ports on the island of San Domingo. Judgment of condemnation was pronounced by the district court. This condemnation was affirmed upon appeal by the circuit court, and from this judgment, in turn, an appeal was taken to the supreme court of the United States. While this appeal was pending, the time limit of the law under which the proceedings were taken expired and the law's existence ceased. Chief Justice Marshall, delivering the opinion of the court, declared that in admiralty cases an appeal suspends the sentence altogether and that the judgment is not *res adjudicata* until the final sentence of the appellate court be pronounced, and that the cause in the appellate court is to be heard *de novo* as if no sentence had ever been passed, and "if no sentence had been pronounced, it has long been settled, on general principles, that after the expiration or repeal of the law no penalty can be enforced nor punishment inflicted for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute." The *Schooner Rachel* v. *United States,* 10 U. S. 329, [3 L. Ed. 239], was decided upon the principle governing the *Schooner General Pinkney* v. *United States,* 9 U. S. 281, [3 L. Ed. 101]. Under the sentence of condemnation the schooner Rachel had been sold and the proceeds of the sale paid over to the United States while the act was in force. The supreme court made a general order for restitution of the property condemned, leaving it to the district court to say whether that order for restitution would be complied with by order for the payment over of the proceeds of the sale as

prayed for by claimants. In *Maryland* v. *Baltimore & Ohio R. R. Co.,* 3 How. 534, [11 L. Ed. 714], Chief Justice Taney, in a brief sentence, expounds the reason for the rule as follows: "The repeal of the law imposing a penalty is itself a remission." In *Railroad Co.* v. *Grant,* 98 U. S. 398, [25 L. Ed. 231], Chief Justice Waite declares: "It is equally well settled that if a law conferring jurisdiction is repealed, without any reservation as to pending cases, all such cases fall with the law." But this language was employed under the following state of facts: An act conferring jurisdiction in certain cases upon the supreme court of the United States on appeal from the supreme court of the District of Columbia, had been repealed. At the time the repeal became operative, the case was pending before the supreme court under a writ of error. The court declared that the single question was, "whether there is any law now in force which gives us authority to re-examine, reverse or affirm the judgment in this case," and held that the repeal of the law conferring jurisdiction deprived the court of jurisdiction. And to the argument that the appellants were deprived of a remedy secured to them by the earlier law, and of which they had availed themselves before the repeal of that law, it was answered: "But a party to a suit has no vested right to a writ of error from one court to another. Such a privilege once granted may be taken away, and if taken away, pending proceedings in the appellate court stop just where the rescinding act finds them, unless special provision is made to the contrary." Of like import is *Insurance Co.* v. *Ritchie,* 72 U. S. 541, [18 L. Ed. 540], where Chief Justice Chase delivered the opinion of the court. The chief justice there says: "It is clear that when the jurisdiction of a cause depends upon the statute, the repeal of the statute takes away the jurisdiction." But this was addressed to an action brought when the parties were citizens of the same state, under the act of 1833, countenancing such actions. It had been repealed before judgment pronounced and it was held that the action must fall. In *Ex parte McCardle,* 74 U. S. 506, [19 L. Ed. 264], the same principle is announced by the chief justice. That case also was one where, when the court came to consider an appeal properly taken, it was confronted with the fact that after the appeal had been taken, the law authorizing it had been repealed. Chief Justice Chase again delivering the

opinion of the court dismissing the appeal, says: "What, then, is the effect of the repealing act upon the case before us? We cannot doubt as to this. Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. And this is no less clear upon authority than upon principle. . . . The general rule, supported by the best elementary writers, is that 'when an act of the legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed.' And the effect of repealing acts upon suits under acts repealed, has been determined by the adjudications of this court. The subject was fully considered in *Norris* v. *Crocker,* 13 How. 429, [14 L. Ed. 210], and more recently in *Insurance Co.* v. *Ritchie,* 72 U. S. 541, [18 L. Ed. 540]. In both of these cases it was held that no judgment could be rendered in a suit after the repeal of the act under which it was brought and prosecuted. . . . Judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the constitution and the laws confer." *Norris* v. *Crocker* was an action brought under the "Fugitive Slave Act," to recover from defendant a penalty prescribed by that act against one who aided a slave to escape. While the action was pending and before it had passed to judgment, the provisions of the act fixing the penalty were repealed. Addressing itself to this state of facts, the supreme court says: "As the plaintiff's right to recover depended entirely on the statute, its repeal deprived the court of jurisdiction over the subject-matter. And, in the next place, as the plaintiff had no vested right in the penalty, the legislature might discharge the defendant by repealing the law." To like effect in *Assessor* v. *Osbornes,* 76 U. S. 567, [19 L. Ed. 748], where, upon the authority of *Insurance Co.* v. *Ritchie,* 72 U. S. 541, [18 L. Ed. 540], it is declared that where jurisdiction depends wholly on a statute, suits brought during the existence of the statute fall with its repeal. *United States* v. *Tynen,* 78 U. S. 88, [20 L. Ed. 153], was a criminal case. Tynen was indicted under the act of 1813. The judges of the circuit court divided upon the question of the sufficiency of the indictment. They certified the case to the supreme court. While it was there pending,

Congress repealed the act of 1813, and it was held that the
prosecution of Tynen fell with the repeal. In *In re Hall*, 167
U. S. 38, [17 Sup. Ct. 723, 42 L. Ed. 69], a judgment given in
the court of claims was reversed by the supreme court of the
United States because interest on the original claim had been
improperly allowed. The case was remanded to the court of
claims for further proceedings not inconsistent with the
opinion of the supreme court. The mandate of the supreme
court was filed in the court of claims, an application was made
for judgment in accordance with the opinion of the supreme
court, and pending the decision upon this application the act
of Congress authorizing the original judgment was repealed,
and the court of claims declined to enter the judgment as
prayed for. The plaintiff thereupon made an application to
the supreme court for *mandamus* to require the court of
claims to enter the judgment. It was held that the effect of
the repealing act was to take away the jurisdiction of the court
of claims to proceed further in any case founded upon the
repealed act. But the supreme court distinctly held that its
decision was not to be construed as an intimation that the
court of claims would not have jurisdiction to entertain and
grant a motion on the part of the petitioner to reinstate the
original judgment without interest. In *Flanigan* v. *Sierra
County*, 196 U. S. 553, [25 Sup. Ct. 314, 49 L. Ed. 597], the
question arose as to the effect of a repeal of an ordinance con-
strued as a revenue ordinance upon proceedings begun before
the repeal and pending after it. The action had been com-
menced in the superior court of the county of Sierra, state of
California, by Sierra County, had been removed to the United
States circuit court, where judgment was given against Flani-
gan, which judgment was affirmed by the circuit court of
appeals. He then obtained from the supreme court of the
United States *certiorari* to the circuit court of appeals. The
suit was brought on the twenty-first day of June, 1900. On
March 23, 1901, the ordinance was repealed. The action was
at that time pending and undetermined, and the familiar prin-
ciple is declared "that no proceedings can be pursued under
the repeal of the statute, though begun before the repeal, un-
less such proceedings be authorized under a special clause in
the repealing act. (9 Bacon's Abridgement, 225.)"

Taking up, in turn, the views embodied in the leading de-

cisions of sister states: In *Commonwealth* v. *Duane*, 1 Binney, (Pa.) 601, [2 Am. Dec. 297], the defendant was convicted under an indictment for libel against the governor of the state. He moved in arrest of judgment. While his motion in arrest of judgment was pending, the legislature of Pennsylvania passed an act "That from and after the passing of this act, no person shall be subject to prosecution by indictment" for libel as at common law. It was held that the judgment should be arrested, since it had not been pronounced, and that the court cannot "pronounce judgment and inflict punishment when the law declares that the defendant shall not be subject to prosecution." In *Balch* v. *City of Detroit*, 109 Mich. 253, [67 N. W. 122], under an existing statute the city of Detroit had proceeded to condemn land for street purposes; trial was had as to the value of the property sought to be condemned; a verdict and award of the jury given, and judgment entered, from which neither party took appeal. The act under which these proceedings were taken was then repealed, and substituted therefor was another act containing no saving clause as to pending litigation, but providing specifically that all proceedings to take private property on the part of the city of Detroit should be held and prosecuted under the provisions of the later act. The city of Detroit refusing to pay the award, *mandamus* was sought to compel it to do so. It defended upon the ground that the repeal of the previous act forbade it from levying an assessment and collecting the amount of the award. But it was held that as the proceedings in confirmation had gone to judgment and that the judgment had become final, the petitioners had the right to insist that the judgment should stand and to enforce payment of the amount awarded them under it. In *Speckert* v. *City of Louisville*, 78 Ky. 288, a fine was imposed upon the appellants for violating the provisions of a penal ordinance forbidding the sale of liquor on Sunday or after half past eleven o'clock at night. The appellants "suspended the judgments in the various actions against them" by appeal. During the pendency of the appeal the ordinance imposing the penalty was repealed. Before the appellate court this fact was made known, and it was argued that there was no law in existence under which the judgments could be enforced. It is to be noted that the appeal herein and of itself had the effect of suspending the judgments. It is said: "The

right of the legislature to repeal such laws cannot be questioned, and the mere fact that a party may be entitled to the benefits resulting from the prosecution of a penal action gives him no vested right to prosecute the action to a recovery, nor does the fact that a judgment has been rendered below vest him with such a right as cannot be divested by legislative action had before execution." Sedgwick on Statutory Law is quoted, and Cooley on Constitutional Limitations, 4th ed., p. 477, to the effect that "if a case is appealed, and pending the appeal the law is changed, the appellate court must dispose of the case under the law in force when their decision is rendered."

In *Butler* v. *Palmer,* 1 Hill, (N. Y.) 324, the statute gave a judgment creditor a year from the date of the sale under the mortgage in which to redeem. A subsequent statute, after sale and while the time for redemption was running shortened the time. After the passage of this act the redemption was attempted within the time limited by the earlier statute, but after the time prescribed by the later act. It was held that the later statute, though operating to shorten the time for the exercise of the previously existing right of redemption was not unconstitutional; that rights specifically conferred by a statute are lost by its repeal unless saved by express words in the repealing statute; that where the statute conferred jurisdiction, its repeal takes away all right of proceeding under the repealed statute, even in regard to suits pending at the time of the repeal, which pending proceedings rest for their support upon the jurisdiction conferred by the repealed statute; but that it is otherwise in respect to such civil rights as have been perfected far enough to stand independent of the statute, or, in other words, such as have ceased to become executory and have become executed. In *Denver & R. G. Ry. Co.* v. *Crawford,* 11 Colo. 598, [19 Pac. 673], after judgment obtained but while the judgment was upon appeal, the statute prescribing a penalty against a railroad company for failure to file with the county clerk notice of the station at which a book should be kept for entering a description of animals killed was repealed, it was held that the repeal put an end to the proceeding, that the appellee could have "no such thing as a vested interest in an unenforced penalty." It is pointed out that the judgment for the penalty does not enforce the penalty, but

the penalty must be enforced by the execution of the judgment, and that the power to enforce it had been suspended by the appeal. In *Church* v. *Rhodes et al.,* 6 How. Pr. (N. Y.), 281, under the law as it existed, a report of referees could be reviewed by rehearing. The provision for a rehearing was repealed and it was held that the repeal applied to pending and inchoate proceedings, that is to say, to actions commenced before the passage of the repealing act, and in progress for rehearing at the time of the passage, and that the effect was to take away the right to a rehearing. In *Vance* v. *Rankin,* 194 Ill. 625, [88 Am. St. Rep. 173, 62 N. E. 807], the law required the trustees of a village to pass an ordinance disconnecting certain designated territory. *Mandamus* was sued out to compel the trustees so to do and judgment as prayed for awarded. The trustees appealed from the judgment. While the appeal was pending the legislature amended the law so as to make it discretionary with the trustees, rather than compulsory upon them, so to do. It was held that the new statute controlled and that by reason of the change in the law it would be improper to enforce mandate where the existing law did not countenance it. In *Western Union Tel. Co.* v. *Smith,* 96 Ga. 569, [23 S. E. 899], plaintiff had obtained a verdict and judgment against the defendant under an act imposing penalties upon telegraph companies. Within the time allowed by law defendant filed its motion for a new trial. The motion was overruled and a bill of exceptions assigning error in the overruling of the motion for a new trial was sued out by the defendant. While the cause was in this condition the penal statute was repealed. Says the supreme court of Georgia: "At the time the repealing act was passed the plaintiff was not entitled to the enforcement of his judgment, and the case must be dealt with as one which was pending when the repeal took place." And then the court declares the established rule that when such a statute is repealed it ends all pending litigation under it.

In this state it is provided by code that any statute may be repealed at any time except when it is otherwise provided therein, and persons acting under any statute are deemed to have acted in contemplation of this power of repeal. (Pol. Code, sec. 327.) It is further provided that "The repeal of any law creating a criminal offense does not constitute a bar

to the indictment or information and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act." (Pol. Code, sec. 329.) In *Thorn* v. *San Francisco,* 4 Cal. 127, the language of Lord Tenterden to the effect that "when an act of parliament is repealed, it must be considered the same as if it had never existed" is quoted, with the comment that "no one will question the right of parliament or the legislature to repeal statutes where subsisting rights are not disturbed or the obligation of contracts impaired." In *McMinn* v. *Bliss,* 31 Cal. 122, appeal from a judgment in an action of forcible detention and detainer had been taken. When the case came to be heard on appeal a motion was made to dismiss upon the ground that the statute under which the action was brought had been repealed. The principle is recognized that the repeal of a statute under which alone a right of action exists, operates as an extinguishment of all actions pending when the repeal takes effect, but it was held, for reasons stated that the statute had not been repealed. In *Lamb* v. *Schottler,* 54 Cal. 319, proceedings were taken under an act which contemplated the creation of a board of water commissioners for the purpose of acquiring by condemnation the Spring Valley Water Works of San Francisco. The supervisors and the board of water commissioners had taken certain steps under the act when the act was repealed. It was declared by this court that the repeal of the statute effectually annulled all proceedings had under it, unless the obligation of a contract would thereby be impaired, or a vested right destroyed, and that by reason of the repeal it was impossible for the supervisors and the water commissioners to proceed further. In *Spears* v. *County of Modoc,* 101 Cal. 303, [35 Pac. 869], a fine had been imposed for violation of a municipal ordinance. Pending an appeal from the judgment the municipal ordinance was repealed. It was held that such repeal operated as a remission of the penalty for the offense and the fine imposed for its violation, and that notwithstanding a mistaken affirmance of the judgment by the superior court after the repeal of the ordinance, the enforcement of such a mistaken judgment would be restrained by injunction. It is said in this case: "By the appeal to the superior court the enforcement of the judgment appealed from

was stayed until after the determination of the appeal. (Pen. Code, sec. 1470.) As no undertaking on appeal was required, the appeal operated as a *supersedeas.* (*McGarrahan* v. *Maxwell,* 28 Cal. 75.) The effect of the appeal was therefore to preserve the rights of the parties in the same condition as they were prior to the entry of the judgment (*Dulin* v. *Pacific Wood & Coal Co.,* 98 Cal. 304, [33 Pac. 123]) ; and until the determination of the appeal the proceeding was a pending action in which the rights of neither party had been conclusively determined." In *First Nat'l Bank of San Luis Obispo* v. *Henderson,* 101 Cal. 307, [35 Pac. 899], an action by the bank against the defendant upon an account stated, judgment was given in favor of the bank. One of the defenses was the failure of the bank to comply with the provisions of the act of April 1, 1876, requiring the bank to file with the county recorder or to publish the statements required by the fact. The defense was established at the trial. Pending the appeal the legislature repealed this statute without a saving clause. It was by this court held that, while ordinarily it is the province of an appellate court to review the judgment of an inferior court as of the time when it was rendered, since ordinarily the judgment of a trial court is a determination of the rights of the parties as they existed at the commencement of the action, the rule was subject to exception, and such an exception was presented in this case, and that a modification of the rule is that if a case is appealed, and pending the appeal the law is changed, the appellate court must dispose of the case under the law in force when its decision is rendered. (Cooley on Constitutional Limitations, p. 469.) It was held that the statute requiring banks to file or publish their statements, under the penalty that a bank so failing could not maintain or prosecute any action, was in its nature penal; that when the legislature had remitted the penalty by repeal of the statute the appellant was no longer able to avail himself of the privilege and defense which it conferred upon him. In *Anderson* v. *Byrnes,* 122 Cal. 272, [54 Pac. 821], an act authorizing a stockholder of a domestic mining corporation to recover from its directors a penalty for failure to comply with the provisions of the act was repealed while an appeal was pending in this court from a judgment given under the act. It was held that the repeal absolutely prevented any further prosecution of the litigation, and that

as no person has a vested right in an unenforced penalty, the proceedings must cease.  In *Napa State Hospital* v. *Flaherty,* 134 Cal. 315, [66 Pac. 322], the action was brought by the state hospital to secure from defendant provision for the support of his son—an inmate of the asylum.  The law countenancing this action had been repealed, and it was by this court held that if the remedy for a right accorded solely by statute is repealed while the right is still inchoate and not reduced to possession or judgment, the right is thereby lost if the repealing statute contains no saving clause.  In *Ball* v. *Tolman,* 135 Cal. 377, [87 Am. St. Rep. 110, 67 Pac. 339], the action was to recover a penalty under the provisions of an act for the better protection of stockholders.  Judgment for plaintiff was entered in the trial court on January 9, 1897. Pending a motion for a new trial the penal provisions of the act were repealed.  The motion for a new trial was denied, and defendant then appealed from the judgment and from the order denying his motion for a new trial.  This court affirmed the judgment and order.  (*Ball* v. *Tolman,* 119 Cal. 358, [51 Pac. 546].)  The *remittitur* issued on January 18, 1908.  Neither this court nor counsel at the time of the affirmance in this court had actual knowledge of the existence of the repealing statute.  Upon subsequent appeal to this court the judgment was vacated and annulled, this court holding, "by reason of the repeal, it was without jurisdiction to proceed, and that in all cases where a court is rendered incompetent to proceed, its proceedings during such incompetency are as invalid as though it had never possessed jurisdiction."  In *City of Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 674], plaintiff had recovered a judgment in a civil action under one of its ordinances prescribing a license fee to be paid by every attorney at law.  By general statute the power to pass such an ordinance was taken away from municipalities.  It was held: "The right given the plaintiff in this case being penal in its nature and the remedy created solely by statute, its enforcement is dependent upon the statute alone.  It is still inchoate and not reduced to possession nor perfected by final judgment. In such case the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause."

These cases have been cited as fairly typifying the extremes of judicial determination, and as expressing the reasons upon

which their rules of decision are based. In the case of penalties and crimes, the repeal operates to defeat all actions pending. In case of a statute conferring civil rights or powers, the repeal operates to deprive the citizen of all such rights or powers which are at the time of the repeal inchoate, incomplete, and unperfected. In the case of statutes conferring jurisdiction, the repeal operates by causing all pending proceedings to cease and terminate at the time and in the condition which existed when the repeal became operative. In cases of judgment pending upon appeal, the rule of decision is that the proceedings abate and the judgment falls. But the general expressions to this effect employed in the decisions, are to be read in each case in the light of the facts which are there disclosed. Here the wise admonition of Chief Justice Marshall in *Cohens* v. *Virginia*, 6 Wheat. 399, [5 L. Ed. 257], applies with peculiar force: "It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit,. when the very point is presented for decision. The reason of this maxim is obvious. The question before the court is investigated with care and considered in its full extent, and other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." In every case where, after judgment, the proceeding has been declared to be "pending" there will be found a direct appeal from the judgment, which direct appeal either suspended the judgment so that it was not final and enforceable, or, as in *Schooner General Pinkney* v. *United States*, 9 U. S. 281, [3 L. Ed. 101], worked a removal of the cause to the appellate court, where it was to be tried *de novo*. The reason given why the proceeding must abate under these circumstances is that, because of the suspension of the judgment by appeal, it is without finality; that to give it finality the court of appeals must itself pronounce its judgment, and that in pronouncing its judgment it must be governed by the existing law. Therefore, when it finds that by the existing law the previous law, under which alone validity could be given to the judgment, has been repealed, the sole prop and foundation for support

of the judgment has been removed, and of necessity it must be declared null and void. No case, however, has been found, and we venture to say none can be found, where a judgment which has been affirmed after direct appeal, and has by such affirmance become final during the existence of the statute supporting it, where the judgment itself has been in the process of execution within the law, and where rights have arisen by virtue of this legal execution of the judgment, has ever been held to be destroyed by a repeal of the statute supporting it because the collateral proceeding of an appeal from an order denying a new trial is pending without *supersedeas* or stay-bond. And to this consideration we now come.

*Western Union Telegraph Co.* v. *Smith,* 96 Ga. 569, [23 S. E. 899], would seem, at first glance, to be in opposition to the declaration just made. There a judgment under a statute imposing a penalty had been recovered. The defendant had moved for a new trial and had secured its bill of exceptions, assigning error in the overruling of its motion for a new trial. The supreme court of Georgia held that the situation disclosed was one which brought the case within the accepted rule that the effect of the repeal is to abate actions for the statutory penalty then pending. But this is based, not alone upon the proposition that the repeal of a statute exacting a penalty is a remission of the penalty unless at the time the appeal operates the penalty has actually been enforced; but still further the court points out that at the time of the repeal the judgment was in suspension and could not have been enforced. Here, not only had the judgment itself been affirmed upon direct appeal, but it was not stayed in law or in fact by virtue of the pending proceedings under the motion for a new trial. The Code of Civil Procedure declares (sec. 1049) that "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." In *Gilmore* v. *American C. I. Co.,* 65 Cal. 63, [2 Pac. 882], it is said: "While proceedings are pending for the review of a judgment, either on appeal or motion for a new trial, the litigation on the merits of the case between the parties is not ended; and until litigation on the merits is ended, there is no finality to the judgment, in the sense of a final determination of the rights of the parties, although it

may have become final for the purpose of an appeal from it."
This language is quite appropriate to the consideration then
before the court.   This court there did not have before it the
question of the effect of a repeal of a statute upon a judgment
which had become final by affirmance after direct appeal, but
it was merely considering and interpreting a stipulation be-
tween parties, to the effect that judgment should be entered
for plaintiff provided such judgment was given for plaintiff
in another action between the parties, the same "to be entered
when the judgment had become final."   Its language was used
solely with reference to the stipulation, holding that, within
its terms, the judgment had not become final, by reason of the
pendency of a motion for a new trial.   In *Sharon* v. *Hill*, 26
Fed. 337, 392, the case of *Gilmore* v. *American C. I. Co.* is
quoted from and commented upon, the discussion in the fed-
eral case being addressed to the proposition whether a judg-
ment in a state court could be pleaded as *res adjudicata* while
an appeal was pending both from the judgment and from the
order denying the motion for a new trial.   Upon the authority
of *Gilmore* v. *American C. I. Co.* it is intimated, though not
necessary to the decision, that the pendency of a motion for
a new trial would be sufficient to forbid the reception of the
judgment in evidence by way of *res adjudicata* or estoppel.
But, upon the other hand, it is now well settled, that where a
judgment has been affirmed upon appeal and has thus become
final, or where the time for appeal has expired, the judgment
may be pleaded as *res adjudicata* or in estoppel, notwithstand-
ing the fact that proceedings upon a motion for a new trial
are pending, which, if successful, would result in the over-
throw of the judgment.   In *Harris* v. *Barnhart*, 97 Cal. 546,
[32 Pac. 589], the matter is discussed and the conclusions of
the court may be summarized as follows: A motion for a new
trial, in the absence of an order of the court to that effect, does
not stay or suspend the operation of a final judgment.   An
action, under section 1049 of the Code of Civil Procedure, is
to be deemed pending while an appeal from the judgment is
pending, or until the time for such an appeal has expired, but
when the judgment upon appeal has been determined by an
affirmance of the judgment, or when the time for appeal has
expired, the judgment is admissible in evidence as *res adjudi-
cata* and to raise an estoppel in bar of the action.   The same

ruling as to the effect of a pending motion for a new trial upon the finality of a judgment is declared in *Young* v. *Brehe*, 19 Nev. 379, [3 Am. St. Rep. 892, 12 Pac. 564], and the soundness of the rule is intimated by the supreme court of the United States in *Hubbell* v. *United States*, 171 U. S. 203, [18 Sup. Ct. 828, 43 L. Ed. 136], where it is said: "Indeed, it may well be doubted whether the pendency of a motion for a new trial would interfere in any way with the operation of the judgment as an estoppel."

In *Spanagal* v. *Dellinger*, 38 Cal. 284, it is said: "Under our system, from the entry of the verdict or filing of the findings of the court, the motion for new trial is a kind of episode, or in a certain sense, a collateral proceeding—a proceeding not in the direct line of the judgment; for the judgment may be at once entered and even executed, while a motion for a new trial is pending in an independent line of proceeding, which ends in an order reviewable on an independent appeal. The motion may be heard and decided and an appeal taken on its own independent record, while the proceedings on and subsequent to the judgment may be still regularly going on, and even an independent appeal taken in that line." And this language is quoted with approval by this court in the later case of *Brison* v. *Brison*, 90 Cal. 323, [27 Pac. 186]; while to the same effect is *Houser & Haines Co.* v. *Hargrove*, 129 Cal. 90, [61 Pac. 660], and *Knowles* v. *Thompson*, 133 Cal. 247, [65 Pac. 468]. A broad difference exists between the operation and legal effect of a direct appeal from a judgment (which, while the appeal is pending, in the generality of cases operates to stay the judgment absolutely, and in all cases operates to destroy for it any claim of finality), and the "collateral proceeding" of an appeal from an order denying a motion for a new trial taken after the judgment itself has become an enforceable finality by reason of its affirmance upon direct appeal. In the former case the courts, when the law which alone will support the judgment given has been withdrawn, have felt and expressed themselves as unable to proceed further with the litigation, since they themselves must pronounce a judgment, and can pronounce it only under the authority of existing law. In the case of appeal from an order refusing a new trial where no stay has been granted and where, as here, the judgment has become a finality, the deci-

sion which the court renders is not upon the judgment appealed from, but upon the order appealed from, and while the effect of its reversal of the order will, of course, be necessarily the setting aside of the judgment, this, after all, is but an incident to the ruling which it makes, which ruling goes not at all to the sufficiency or finality of the judgment, but only as to whether, within familiar rules and limitations, the judgment was fairly given. Herein our motion for a new trial differs essentially from the common-law motion which was always heard and determined before entry of judgment, so that the appeal from the judgment embraced all questions. Under our system, the appeal from an order denying a new trial is a separate and independent appeal, which, if prosecuted in time, may be taken after the judgment has become final. Excepting when ordered by *supersedeas* or permitted by stay-bond, it in no way suspends the judgment nor interferes with its finality. It is in this respect more in the nature of an equitable bill of review which, while countenanced in proper cases, even after a judgment of affirmance upon appeal, never operated in and of itself to suspend the decree. Indeed it has been so expressly declared by this court in *Fowden Admr.* v. *Pacific Coast S. S. Co.,* 149 Cal. 151, 154, [86 Pac. 178].

We conclude, therefore, that as the judgment had become final while the statute authorizing the action was in force, its finality is not disturbed by a pending motion for a new trial which does not operate in any way to stay the execution of the judgment; that as the statute authorizes the people upon the relation of the attorney-general to proceed in equity to have the bank declared insolvent, leaving the proceedings governing the action those which generally obtain in the practice of this state, the repeal of the statute did not destroy the right of the appellant to be heard upon this motion for a new trial; that if the appeal from the motion for a new trial should be granted, it would necessarily have the effect of vacating the judgment, and that by virtue of the repeal the action could then no longer be prosecuted; that if, however, the appeal from the order denying the motion for a new trial should be denied and the order affirmed, the repeal of the statute would not affect any proceeding taken under it and under the judgment heretofore affirmed.

2. To the consideration of the appeal from the order re-
fusing appellant's motion for a new trial we now proceed.
Many of the propositions advanced go to the alleged errors of
the court in admitting evidence of the action and reports of
the bank commissioners in the sequestration of the bank's
property, and of their report that it was unsafe to permit the
bank longer to continue business. They are based upon appel-
lant's contention that, for specified reasons, the act itself is
unconstitutional. The objections thus advanced have been
completely answered in the opinion upon the appeal from the
judgment and do not require further discussion. (*People* v.
*Bank of San Luis Obispo*, 154 Cal. 194, [97 Pac. 306] ; see,
also, *State ex rel. Sparks* v. *State Bank & Trust Co.*, 31 Nev.
456, [103 Pac. 407, 105 Pac. 567].) The evidence was suffi-
cient to justify the finding of the insolvency of the bank. That
evidence disclosed that the assets of the bank amounted to
$158,903.70; that the principal items of assets were inventoried
as "Bills Receivable $133,332.56, Profit & Loss account of
$5,022.69, and real estate and bank building at $19,000." The
cash on hand was $367.35. The bills receivable consisted in
large part of fifteen notes signed by the San Luis Land &
Improvement Company, a note of the Breeze Publishing Com-
pany for four thousand dollars and $645.75 accrued interest,
a note of James L. Crittenden for $22,268.13 principal and
$7,779.64 accrued interest, and sundry other notes. The notes
of the San Luis Land & Improvement Company were secured
by mortgages upon real estate and there was conflicting evi-
dence as to the value of that real estate. The officers of the
Bank of San Luis Obispo likewise constituted the officers of
the San Luis Land & Improvement Company. On the debit
side of the statement there were certificates of deposit amount-
ing to $54,433.49. Some of these, with accumulated interest,
were due and others coming due. Thus, upon July 24, 1906,
there was due four hundred dollars with accumulated interest
upon a certificate of deposit of January 17, 1905, payable six
months after date; also $473 upon a like certificate of July
18, 1905; $3,040, with accumulated interest upon like certifi-
cate of February 6, 1905, and twenty thousand dollars upon
a certificate of September 27, 1902, due and payable twelve
months after date. Manifestly, these overdue demands could
not be met from cash on hand of $367.35, and it appears that

the answer which the bank officials made to the inquiries of the bank commissioners was that Mr. Crittenden, the president, was in San Francisco endeavoring to borrow money to meet the demands against the bank. Without further elaboration of the evidence it is apparent that it sustained the finding of the court as to the insolvency of the institution.

Wherefore the motion to vacate and annul the judgment and dismiss the proceedings is denied, and the order denying defendants' motion for a new trial is affirmed.

Shaw, J., Lorigan, J., Melvin, J., and Sloss, J., concurred.

Rehearing denied.