25 Cal.Rptr.3d 448 (2005)
127 Cal.App.4th 274
Gregory KLEEMANN, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and Department of Justice, Respondents.
No. B177466.
Court of Appeal, Second District, Division Seven.
March 2, 2005.
Review Denied May 11, 2005.[*]
*449 Lewis, Marenstein, Wicke & Sherwin, and Karin V.L. Gomez, Woodland Hills, for petitioner.
William A. Herreras, Grover City, for California Applicants Attorneys Association, as amicus curiae for petitioner.
Robert W. Daneri, Suzanne Ah-Tye, San Francisco, and Don E. Clark, for respondent, State of California, Department of Justice.
*450 No appearance for respondent, Workers' Compensation Appeals Board.
ZELON, J.

INTRODUCTION
Petitioner, Gregory Kleemann, claimed industrial injuries from work as a special agent for respondent, State of California. After his claim was tried and submitted to the workers' compensation administrative law judge (WCJ) for a decision, the Legislature enacted Senate Bill No. 899 (2003-2004 Reg. Sess.) (Bill 899) and required apportionment based on causation under new Labor Code sections 4663 and 4664.
The WCJ vacated submission to address the new apportionment requirements. Kleemann petitioned respondent, Workers' Compensation Appeals Board (WCAB), for a ruling that new Labor Code sections 4663 and 4664 did not apply but the WCAB remanded to the WCJ for a final decision.
Kleemann contends before this court that new Labor Code sections 4663 and 4664 are inapplicable, since his injuries preceded enactment of S.B. 899 and the Legislature did not intend, and could not legally require, retroactive application of those provisions. We conclude that the Legislature intended new Labor Code sections 4663 and 4664 to apply to pending cases such as Kleemann's, prospectively from the date of enactment of S.B. 899, regardless of the date of injury. Accordingly, the decision of the WCAB is annulled and the matter is remanded for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND
Gregory Kleemann, a special agent and investigator for the Department of Justice of the State of California (State), claimed injury to his cardiovascular system due to stress during employment from 1996 to April 30, 2000. Kleemann also claimed injuries to his right knee from work on April 14, 1999, and on August 14, 2001. Kleemann had previously worked as a police officer for the City of Los Angeles, and in that capacity had injured his back and right knee on May 27, 1986, for which he had received 16-1/2 percent permanent disability indemnity.
On March 22, 2000, Kleemann and the State entered into "Stipulations with Request for Award" (Stipulations), agreeing that the April 14, 1999, right knee injury did not result in permanent disability. On October 11, 2002, Kleemann petitioned to reopen the April 14, 1999, right knee injury claim for new and further disability.
Kleemann also obtained a medical-legal report dated January 2, 2003, from Dennis Ainbinder, M.D. Dr. Ainbinder recommended work restrictions for the right knee, and apportioned 40 percent of the right knee disability to the injury of April 14, 1999, and 60 percent to the injury of August 14, 2001. Dr. Ainbinder further concluded that the right knee disability was not apportioned to the 1986 right knee injury, because Kleemann's pain from that injury had "fully resolved" and "Kleemann did rehabilitate himself".
Kleemann's internist reported his cardiovascular and hypertensive disease precluded heavy work and unduly stressful environments, without apportionment to nonindustrial factors. The State's internist reported that Kleemann had no permanent disability, and his coronary and hypertensive condition requiring treatment was caused by multiple factors, including hereditary predisposition, abnormal lipids and work stress.
*451 Kleemann and the State appeared at a mandatory settlement conference and documented issues and exhibits. On March 24, 2004, trial commenced and Kleemann testified regarding his industrial injuries, treatment and disability. Kleemann also testified that he did not have disability when he was hired by the State and passed a physical exam in 1996. The matter was then submitted to the WCJ for decision.
On April 28, 2004, the WCJ vacated submission and scheduled a status conference. The WCJ's order indicated that the medical record required further development because of amendments to the apportionment rules under S.B. 899.[1]
Kleemann petitioned the WCAB for removal,[2] alleging that the WCJ's retroactive application of apportionment under new sections 4663 and 4664 would cause irreparable harm. In the report on removal, the WCJ explained that new sections 4663 and 4664 became applicable to Kleemann's case upon enactment of S.B. 899 under Section 47.[3] The WCAB *452 adopted the WCJ's report and denied removal, reasoning that there was no substantial prejudice or irreparable harm because Kleemann could petition for reconsideration after a final decision by the WCJ. The WCAB expressly declined to decide whether new sections 4663 and 4664 applied.
Kleemann petitioned for writ of review contending that: the application of new sections 4663 and 4664 in this case is an impermissible retroactive application of the law under Aetna Cas. & Surety Co. v. Ind. Acc. Com. (1947) 30 Cal.2d 388, 182 P.2d 159 (Aetna Casualty);[4] that application of new sections 4663 and 4664 will lead to litigation, delays and costs, contrary to the goals of workers' compensation; that in any event apportionment of heart disability for public safety members is precluded under section 3212;[5] and finally that Dr. Ainbinder did in fact address causation.[6]
The State answered[7] and contends that: new sections 4663 and 4664 became applicable to pending cases prospectively from enactment of S.B. 899, regardless of the date of injury, under Section 47; Section 47 only precludes S.B. 899 from changing final decisions; Kleemann's case has not been reduced to a final judgment; and new sections 4663 and 4664 lessen liability and application promotes the purpose of this urgency legislation expressed in Section 49.[8] The State also asserts that section *453 3212 addresses causation of injury and not disability.

DISCUSSION

I. Standards of Review
This case requires us to determine the meaning and effect of the statutory provisions at issue. The Legislature's intent should be determined and given effect.[9] We interpret governing statutes or application of the law to the facts de novo, and the WCAB's construction is entitled to great weight unless clearly erroneous.[10]
We will affirm factual findings supported by substantial evidence.[11] However, we are not bound to accept factual findings that are erroneous, unreasonable, illogical, improbable, or inequitable when viewed in light of the entire record and the overall statutory scheme.[12]
In construing these provisions, we look first to the plain or ordinary meaning of the statutory language, unless the language or intent is uncertain.[13] Every word and clause is given effect so that no part or provision is useless, deprived of meaning or contradictory.[14] We interpret statutory language in light of the purpose of the statute and the statutory framework as a whole,[15] using rules of construction or legislative history and practice to aid in determining legislative intent where statutory language or the Legislature's intent is uncertain.[16]
When new legislation repeals existing law, statutory rights normally end with repeal unless the rights are vested pursuant to contract or common law.[17] In a case such as this, where workers' compensation rights which are purely statutory and not based on common law are at issue,[18] repeal ends the right[19] absent a *454 savings clause.[20] Rights end during litigation if repeal occurs before final judgment.[21]

II. New Sections 4663 and 4664 Create Both Substantive and Procedural Changes
The amendments to the Labor Code at issue in this case make both procedural and substantive changes to the statutory scheme governing workers' compensation.[22] New section 4663, subsections (b), (c) and (d) are primarily procedural changes. New subsections (b) and (c) address physician reporting requirements regarding apportionment, while subsection (d) instructs injured workers to disclose prior permanent disability or impairment upon request. These subsections mainly concern how or what to do, and are not substantive changes in existing rights, compensation or liability.[23] The portion of this statute that affects procedural and not substantive rights may be applied to pending cases without further analysis, as it is applied prospectively to procedures that subsequently arise.[24]
*455 In contrast, new sections 4663, subsection (a) and 4664 are primarily substantive changes. Permanent disability is now apportioned on the basis of causation, with employer's liability limited to the "percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment". (New section 4664, subsection (a).) Under former section 4663,[25] permanent disability from the industrial "lighting up" of a preexisting nondisabling disease process could be compensable.[26] Liability for compensation may now be changed or even eliminated where permanent disability is caused by a prior nondisabling condition or has been previously awarded.[27] Thus, apportionment based on causation under new sections 4663, subsection (a) and 4664 is a substantive change.[28]
With respect to substantive changes, new legislation is generally applied prospectively unless it is clear from the statutory language or extrinsic sources that the Legislature intended retroactive application.[29] Prospective application is also indicated if the statute is ambiguous.[30] *456 Thus, we must, at least as to the portion of the statutes changing substantive rights, determine whether the Legislature intended retroactive application.[31]

III. The Legislature Intended New Sections 4663 and 4664 to Apply to Pending Cases

A. Section 47 Expresses the Legislature's Intent

Section 47 unambiguously states that any amendment, addition or repeal under S.B. 899 applies prospectively from the date of enactment, regardless of the date of injury, unless otherwise specified. With respect to new sections 4663 and 4644, there is no provision specifying any different treatment.[32] Thus, the statutory language literally includes the injuries claimed by Kleemann, whether characterized as retroactive application under Aetna Casualty or prospective under Section 47.[33]
Kleemann argues that the language of Section 46[34] is the Legislature's expression that retroactive application is intended, which would be unnecessary if all provisions of S.B. 899 are applied retroactively under the prospective language of Section 47. However, the difference in language reflects the fact that Sections 46 and 47 apply differently. Section 46 eliminates the treating physician's presumption of correctness in all cases, even if the presumption arose before enactment of S.B. 899. Therefore, any effect on collateral rights or obligations must be determined as if the presumption had never been in effect.[35] In contrast, the language in Section 47 indicates that other statutory changes such as apportionment based on causation will apply only to pending cases as of the date of enactment of S.B. 899. As a result, the retroactive repeal in Section 46 is not superfluous to the provisions of Section 47. In any event, the Legislature's intent is clearly stated in Section 47 and includes Kleemann's injuries under the analysis of Aetna Casualty and Graczyk.

B. Section 47 Does Not Preclude Application of New Sections 4663 and 4664

Section 47 also provides that amendments, additions or repeals made by S.B. 899 "shall not constitute good cause to reopen or rescind, alter, or amend any *457 existing order, decision or award". However, there is no such "existing order, decision or award" in this case.
Generally, statutory rights end during litigation with repeal or amendment of the statute, unless appeals were exhausted and there is a final judgment.[36] We conclude that the Legislature intended the statutory language in Section 47 to be consistent with this final judgment rule.[37]
Reopening in workers' compensation generally refers to reopening orders, decisions or awards for new and further disability under section 5410.[38] Language regarding good cause to rescind, alter, or amend incorporates similar language of good cause needed under the WCAB's continuing jurisdiction to rescind, alter, or amend any order, decision, or award under sections 5803[39] and 5804.[40] Sections 5410, 5803 and 5804 normally apply to orders, decisions or awards that are beyond the reconsideration period under sections 5900 et seq.,[41] or where appeals have been exhausted *458 and a decision is final and no longer pending.[42]
Sections 5410, 5803 and 5804 do not apply in this matter. As indicated by the WCAB, Kleemann has the ability to petition for reconsideration of the final decision by the WCJ under sections 5900 et seq. In addition, applying apportionment under new sections 4663 and 4664 does not in this case reopen, rescind, alter or amend a previous "existing order, decision, or award" of permanent disability. There is no reimbursement of previously awarded compensation under the new statutes, Kleemann petitioned to reopen the Stipulations, and rehabilitation from permanent disability under Robinson and "lighting up" a preexisting nondisabling disease process are questions of fact under former law and not vested rights.[43] Therefore, Kleemann's claims are still pending and not final judgments, and sections 5410, 5803 and 5804 are not relevant. Consequently, application of S.B. 899 is not precluded by Section 47.

C. Public Policy Does Not Preclude New Sections 4663 and 4664

Kleemann also argues that application of new sections 4663 and 4664 will require further litigation of apportionment under new rules, as well as additional medical reports or discovery. He asserts that imposition of such delays and costs is contrary to the expeditious and inexpensive resolution of workers' compensation claims required by the California Constitution.[44]
While further litigation under new rules and discovery may be required, there is no evidence in this record of the extent of delay or cost that could allow us to determine that these provisions violate section 4 of article XIV of the California Constitution. We cannot decide this issue as an abstract principle. The balance between long term savings in time and money, and enactment of additional procedural complexities, is, in the first instance, a policy consideration within the province of the Legislature.[45]

*459 D. The Law in Effect Should Be Applied

In denying removal, the WCAB reasoned that there is no substantial prejudice or irreparable harm in requiring Kleemann to petition for reconsideration of the WCJ's final decision whether new sections 4663 and 4664 apply. We conclude that the WCAB should have decided the issue. Rights end with a statute's repeal during litigation, and the tribunal is obligated to apply the laws in effect.[46] As we have explained, new sections 4663 and 4664 became applicable upon enactment of S.B. 899, before the WCAB denied removal. Requiring litigation of issues basic to liability of compensation, under what may turn out to be incorrect law, invites avoidable delays, costs and error, and can create substantial prejudice and irreparable harm.

E. Apportionment Is Not Moot

Kleemann also contends that apportionment is moot because Dr. Ainbinder addressed causation of the right knee disability and section 3212 precludes apportionment of heart disability for public safety personnel. However, Dr. Ainbinder apparently based apportionment on Kleemann's alleged recovery from his previous industrial right knee injury and permanent disability, and on former apportionment statutes. Given that we are remanding the matter to apply apportionment under new sections 4663 and 4664, we also instruct the WCAB to determine the need for additional discovery and application of section 3212.

DISPOSITION
The decision of the WCAB is annulled and the matter is remanded for further proceedings consistent with this opinion.
We concur: JOHNSON, Acting P.J., and WOODS, J.
NOTES
[*] Chin, J., and Morino, J., dissented.
[1] On April 19, 2004, the Legislature enacted S.B. 899.

Section 33 of S.B. 899 states: "Section 4663 of the Labor Code is repealed."
Section 34 of S.B. 899 states: "Section 4663 is added to the Labor Code, to read: [¶] 4663.(a) Apportionment of permanent disability shall be based on causation. [¶] (b) Any physician who prepares a report addressing the issue of permanent disability due to a claimed industrial injury shall in that report address the issue of causation of the permanent disability. [¶] (c) In order for a physician's report to be considered complete on the issue of permanent disability, it must include an apportionment determination. A physician shall make an apportionment determination by finding what approximate percentage of the permanent disability was caused by the direct result of injury arising out of and occurring in the course of employment and what approximate percentage of the permanent disability was caused by other factors both before and subsequent to the industrial injury, including prior industrial injuries. If the physician is unable to include an apportionment determination in his or her report, the physician shall state the specific reasons why the physician could not make a determination of the effect of that prior condition on the permanent disability arising from the injury. The physician shall then consult with other physicians or refer the employee to another physician from whom the employee is authorized to seek treatment or evaluation in accordance with this division in order to make the final determination. [¶] (d) An employee who claims an industrial injury shall, upon request, disclose all previous permanent disabilities or physical impairments."
Section 35 of S.B. 899 states in relevant part: "Section 4664 is added to the Labor Code, to read: 4664.(a) The employer shall only be liable for the percentage of permanent disability directly caused by the injury arising out of and occurring in the course of employment. [¶] (b) If the applicant has received a prior award of permanent disability, it shall be conclusively presumed that the prior permanent disability exists at the time of any subsequent industrial injury. This presumption is a presumption affecting the burden of proof."
Section 37 of S.B. 899 provides: "Section 4750 of the Labor Code is repealed."
Section 38 of S.B. 899 states: "Section 4750.5 of the Labor Code is repealed."
All further statutory references are to the Labor Code unless otherwise stated.
[2] Section 5310 states in relevant part: "The appeals board may appoint one or more workers' compensation administrative law judges in any proceeding, as it may deem necessary or advisable, and may refer, remove to itself, or transfer to a workers' compensation administrative law judge the proceedings on any claim."

Removal to the WCAB is considered an extraordinary remedy which will be denied absent a showing of substantial prejudice or irreparable injury. (Swedlow, Inc. v. Workers' Comp. Appeals Bd. (1983) 48 Cal.Comp.Cases 476.)
[3] Section 47 of S.B. 899 states: "The amendment, addition, or repeal of, any provision of law made by this act shall apply prospectively from the date of enactment of this act, regardless of the date of injury, unless otherwise specified, but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board."
[4] In Aetna Casualty, the Supreme Court ruled that, because the law in force on the date of injury normally determines the right of recovery in workers' compensation, a Labor Code amendment after the date of injury that increases compensation is substantive, and should be applied prospectively, not retroactively. (Id. at pp. 392-395, 182 P.2d 159.) Such statutes are not given retrospective operation without clear indication the Legislature so intended. (Id. at p. 393, 182 P.2d 159.) In contrast, statutes that effect procedural changes will be applied to pending cases, but application is considered prospective where the analysis looks at the legal requirements at the date of the proceedings. (Id. at p. 394, 182 P.2d 159.)
[5] Section 3212 provides a presumption that heart trouble of specified public safety personnel is industrial, and in part states: "The hernia, heart trouble, or pneumonia so developing or manifesting itself in those cases shall in no case be attributed to any disease existing prior to that development or manifestation."
[6] In a letter to the court after the petition for writ of review was filed, Kleemann requested that we take judicial notice of the recent WCAB en banc decision, Scheftner v. Rio Linda School District (Oct. 4, 2004) 69 Cal.Comp. Cases 1281. In Scheftner, a WCAB majority decided that under Section 47 new sections 4663 and 4664 are not applicable if there is an "existing order" before enactment of S.B. 899, such as a significant order that closes discovery at a mandatory settlement conference or an order of submission after trial. However, Scheftner was appealed to the Court of Appeal, Third Appellate District on November 18, 2004, No. C048298, and review was granted on February 3, 2005.
[7] The State did not file a timely answer under California Rules of Court, rule 57(b). However, the State timely requested leave to respond to the amicus brief filed by the California Applicants' Attorneys Association, which was granted.
[8] Section 49 of S.B. 899 states: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to provide relief to the state from the effects of the current workers' compensation crisis at the earliest possible time, it is necessary for this act to take effect immediately."
[9] DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 387-388, 20 Cal.Rptr.2d 523, 853 P.2d 978 (Dubois); Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230, 110 Cal.Rptr. 144, 514 P.2d 1224 (Moyer).
[10] Boehm & Associates v. Workers' Comp. Appeals Bd. (1999) 76 Cal.App.4th 513, 515-516, 90 Cal.Rptr.2d 486; Ralphs Grocery Co. v. Workers' Comp. Appeals Bd. (1995) 38 Cal. App.4th 820, 828, 45 Cal.Rptr.2d 197.
[11] Western Growers Ins. Co. v. Workers' Comp. Appeals Bd. (1993) 16 Cal.App.4th 227, 233, 20 Cal.Rptr.2d 26 (Western Growers).
[12] Western Growers, supra, 16 Cal.App.4th at page 233, 20 Cal.Rptr.2d 26; Bracken v. Workers' Comp. Appeals Bd. (1989) 214 Cal. App.3d 246, 254, 262 Cal.Rptr. 537.
[13] DuBois, supra, 5 Cal.4th at pages 387-388, 20 Cal.Rptr.2d 523, 853 P.2d 978; Moyer, supra, 10 Cal.3d at page 230, 110 Cal.Rptr. 144, 514 P.2d 1224.
[14] DuBois, supra, 5 Cal.4th at page 388, 20 Cal.Rptr.2d 523, 853 P.2d 978; Moyer, supra, 10 Cal.3d at page 230, 110 Cal.Rptr. 144, 514 P.2d 1224.
[15] DuBois, supra, 5 Cal.4th at page 388, 20 Cal.Rptr.2d 523, 853 P.2d 978; Moyer, supra, 10 Cal.3d at pages 230-231, 110 Cal.Rptr. 144, 514 P.2d 1224.
[16] DuBois, supra, 5 Cal.4th at pages 387-388, 393, 20 Cal.Rptr.2d 523, 853 P.2d 978.
[17] Governing Board v. Mann (1977) 18 Cal.3d 819, 829, 135 Cal.Rptr. 526, 558 P.2d 1 (Governing Board) (authority to dismiss a teacher for marijuana possession under Education Code ended by implied repeal of Health and Safety Code enactment during appeal); Southern Service Co., Ltd. v. Los Angeles (1940) 15 Cal.2d 1, 11-12, 97 P.2d 963 (Southern Service) (law allowing taxpayer refunds, repealed during appeal, ended rights under the statute); People v. Bank of San Luis Obispo (1910) 159 Cal. 65, 75-81, 112 P. 866 (judgment final after appeal despite subsequent repeal of statute and appeal of denial of motion for new trial).
[18] Graczyk v. Workers' Comp. Appeals Bd. (1986) 184 Cal.App.3d 997, 229 Cal.Rptr. 494 (Graczyk). In Graczyk, the Court of Appeal ruled that an amendment to section 3352, which excluded student athletes as employees, applied retroactively to the prior date of injury. The court noted that workers' compensation is wholly statutory, and substitutes a new system of rights and obligations in place of the common law. (Id. at pp. 1002-1003, 229 Cal.Rptr. 494.) Where a right depends on statute and does not exist under common law, repeal of the statute destroys the right unless reduced to final judgment or the statute has a savings clause. (Id. at pp. 1006-1007, 229 Cal.Rptr. 494.) The repeal of a statutory right is justified because statutory remedies are pursued with the realization that the Legislature may abolish the right to recovery at any time. (Id. at p. 1007, 229 Cal.Rptr. 494.) Although the law in force at the time of injury is usually determinative in workers' compensation, a statutory change may be applied retroactively if clearly intended by Legislature. (Id. at pp. 1007-1008, 229 Cal.Rptr. 494.)
[19] Southern Service, supra, 15 Cal.2d at pages 11-12, 97 P.2d 963; People v. Bank of San Luis Obispo, supra, 159 Cal. at page 67, 112 P. 866; Graczyk, supra, 184 Cal.App.3d at pages 1006-1007, 229 Cal.Rptr. 494. See also Beckman v. Thompson (1992) 4 Cal. App.4th 481, 489, 6 Cal.Rptr.2d 60 (Beckman).
[20] Section 4 is a savings clause. (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1206-1208, 246 Cal.Rptr. 629, 753 P.2d 585 (Evangelatos) (Proposition 51 is prospective unless clear legislative intent retroactive).)

Section 4 states: "No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible."
[21] Governing Board, supra, 18 Cal.3d at pages 829; 831, 135 Cal.Rptr. 526, 558 P.2d 1; People v. Bank of San Luis Obispo, supra, 159 Cal. at pages 67, 79-80, 112 P. 866; Beckman, supra, 4 Cal.App.4th at pages 488-489, 6 Cal.Rptr.2d 60.
[22] Tapia v. Superior Court (1991) 53 Cal.3d 282, 287-289, 279 Cal.Rptr. 592, 807 P.2d 434 (Tapia) (procedural part of Proposition 115 may be applied prospectively to trial for crime committed before measure was approved).
[23] Aetna Casualty, supra, 30 Cal.2d at pages 392-395, 182 P.2d 159.
[24] Aetna Casualty, supra, 30 Cal.2d at page 394, 182 P.2d 159; Rosefield Packing Co. v. Superior Court (1935) 4 Cal.2d 120, 47 P.2d 716 (procedural change to Code of Civil Procedure requiring trial within five years of filing suit was applicable to pending action and not violation of due process, since plaintiff had year to bring case to trial after amendment); Pebworth v. Workers' Comp. Appeals Bd. (2004) 116 Cal.App.4th 913, 917-918, 10 Cal.Rptr.3d 832 (Labor Code amendment after date of injury allowing settlement of vocational rehabilitation applicable prospectively as a procedural change in calculating liability; no new or additional liability or substantial affect on existing rights and obligations); Industrial Indemnity Co. v. Workers' Comp. Appeals Bd. (1978) 85 Cal.App.3d 1028, 1031-1032, 149 Cal.Rptr. 880 (amendment repealing voluntary vocational rehabilitation and requiring employer to provide benefit ruled substantive and not retroactive to date of injury before amendment); State Comp. Ins. Fund v. Workers' Comp. Appeals Bd. (1977) 71 Cal.App.3d 133, 139, 139 Cal. Rptr. 410 (allowing employee instead of the employer to choose treating physician is procedural amendment after date of injury).
[25] Former section 4663 provided: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."
[26] Formerly, apportionment was to disability and not to pathology or causation. (Franklin v. Workers' Comp. Appeals Bd. (1978) 79 Cal. App.3d 224, 238, 242, 145 Cal.Rptr. 22 (Franklin).) Disability from "lighting up", aggravating or accelerating a preexisting non-disabling disease process may have been compensable without apportionment. (Pullman Kellogg v. Workers' Comp. Appeals Bd. (1980) 26 Cal.3d 450, 454, 161 Cal.Rptr. 783, 605 P.2d 422; Zemke v. Workmen's Comp.App. Bd. (1968) 68 Cal.2d 794, 798, 69 Cal.Rptr. 88, 441 P.2d 928; Franklin, supra, 79 Cal.App.3d at pp. 237-238, 242, 145 Cal.Rptr. 22.)
[27] In Robinson v. Workers' Comp. Appeals Bd. (1981) 114 Cal.App.3d 593, 171 Cal.Rptr. 48, an injured worker was determined to be rehabilitated from permanent disability due to a prior industrial injury and entitled to an unapportioned award, as established by work activity and no medical treatment for seven years before being reinjured.
[28] Aetna Casualty, supra, 30 Cal.2d at pages 392-395, 182 P.2d 159.
[29] McClung v. Employment Development Depart. (2004) 34 Cal.4th 467, 475, 20 Cal. Rptr.3d 428, 99 P.3d 1015 (McClung) (application of Supreme Court interpretation of prior law that co-employee is not personally liable for sexual harassment cannot be changed by amendment imposing liability, despite provision amendment is clarification of existing law and absent clear indication retroactive application intended); Myers v. Philip Morris Companies, Inc. (2002) 28 Cal.4th 828, 840-841, 844, 123 Cal.Rptr.2d 40, 50 P.3d 751 (Myers) (repeal of tobacco industry statutory immunity is prospective absent a clear indication by Legislature retrospective application is intended); Aetna Casualty, supra, 30 Cal.2d at page 393, 182 P.2d 159; Callet v. Alioto (1930) 210 Cal. 65, 67-68, 290 P. 438 (Callet) (guest statute not retroactive since ordinary negligence action by passenger against driver is vested right based on common law); Graczyk, supra, 184 Cal.App.3d at page 1007, 229 Cal.Rptr. 494; Evangelatos, supra, 44 Cal.3d at pages 1207-1208, 246 Cal.Rptr. 629, 753 P.2d 585.
[30] Myers, supra, 28 Cal.4th at pages 840-841, 123 Cal.Rptr.2d 40, 50 P.3d 751; Tapia, supra, 53 Cal.3d at pages 287-289, 279 Cal. Rptr. 592, 807 P.2d 434.
[31] McClung, supra, 34 Cal.4th at page 475, 20 Cal.Rptr.3d 428, 99 P.3d 1015; Myers, supra, 28 Cal.4th at pages 840-841, 844, 123 Cal. Rptr.2d 40, 50 P.3d 751; Aetna Casualty, supra, 30 Cal.2d at pages 392-393, 182 P.2d 159; Callet, supra, 210 Cal. at pages 67-68, 290 P. 438; Evangelatos, supra, 44 Cal.3d at pages 1207-1208, 246 Cal.Rptr. 629, 753 P.2d 585.
[32] DuBois, supra, 5 Cal.4th at pages 387-388, 20 Cal.Rptr.2d 523, 853 P.2d 978; Moyer, supra, 10 Cal.3d at page 230, 110 Cal.Rptr. 144, 514 P.2d 1224.
[33] The inclusion of all dates of injuries under Section 47 is permissible because the intent of the Legislature is clearly stated, apportionment rights are based on statute and not vested pursuant to contract or common law, and parties act and litigate in contemplation of repeal of statutory rights. (Aetna Casualty, supra, 30 Cal.2d at pp. 393-394, 182 P.2d 159; Graczyk, supra, 184 Cal.App.3d at pp. 1003-1008, 229 Cal.Rptr. 494.)
[34] Section 46 of S.B. 899 states: "The repeal of the personal physician's or chiropractor's presumption of correctness contained in Section 4062.9 of the Labor Code made by this act shall apply to all cases, regardless of the date of injury, but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board."
[35] See Garnett v. Workers' Comp. Appeals Bd. (2004) 69 Cal.Comp.Cases 1467; Gonzales v. Workers' Comp. Appeals Bd. (2004) 69 Cal. Comp.Cases 1472.
[36] Governing Board, supra, 18 Cal.3d at pages 828-831, 135 Cal.Rptr. 526, 558 P.2d 1; People v. Bank of San Luis Obispo, supra, 159 Cal. at pages 79-80, 112 P. 866; Beckman, supra, 4 Cal.App.4th at page 489, 6 Cal. Rptr.2d 60; Graczyk, supra, 184 Cal.App.3d at pages 1006-1007, 229 Cal.Rptr. 494.
[37] DuBois, supra, 5 Cal.4th at pages 387-388, 20 Cal.Rptr.2d 523, 853 P.2d 978; Moyer, supra, 10 Cal.3d at pages 230-231, 110 Cal. Rptr. 144, 514 P.2d 1224.
[38] Section 5410 provided: "Nothing in this chapter shall bar the right of any injured worker to institute proceedings for the collection of compensation, including vocational rehabilitation services, within five years after the date of the injury upon the ground that the original injury has caused new and further disability or that the provision of vocational rehabilitation services has become feasible because the employee's medical condition has improved or because of other factors not capable of determination at the time the employer's liability for vocational rehabilitation services otherwise terminated. The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction within this period. This section does not extend the limitation provided in Section 5407."
[39] Section 5803 states: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division, and the decisions and orders of the rehabilitation unit established under Section 139.5. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor. [¶] This power includes the right to review, grant or regrant, diminish, increase, or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor the award was made has either recurred, increased, diminished, or terminated."
[40] Section 5804 states: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years and any counterpetition seeking other relief filed by the adverse party within 30 days of the original petition raising issues in addition to those raised by such original petition. Provided, however, that after an award has been made finding that there was employment and the time to petition for a rehearing or reconsideration or review has expired or such petition if made has been determined, the appeals board upon a petition to reopen shall not have the power to find that there was no employment."
[41] Section 5900, subdivision (a) states: "Any person aggrieved directly or indirectly by any final order, decision, or award made and filed by the appeals board or a workers' compensation judge under any provision contained in this division, may petition the appeals board for reconsideration in respect to any matters determined or covered by the final order, decision, or award, and specified in the petition for reconsideration. The petition shall be made only within the time and in the manner specified in this chapter."

Section 5903 also states in relevant part: "At any time within 20 days after service of any final order, decision, or award made and filed by the appeals board or a workers' compensation judge granting or denying compensation, or arising out of or incidental thereto, any person aggrieved thereby may petition for reconsideration ..."
[42] Nickelsberg v. Workers' Comp. Appeals Bd. (1991) 54 Cal.3d 288, 297, 300-301, 285 Cal. Rptr. 86, 814 P.2d 1328; Nicky Blair's Restaurant v. Workers' Comp. Appeals Bd. (1980) 109 Cal.App.3d 941, 953-957, 167 Cal.Rptr. 516.
[43] Graczyk, supra, 184 Cal.App.3d at pages 1006-1007, 229 Cal.Rptr. 494.
[44] Article XIV, section 4 of the California Constitution states in relevant part: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workers' compensation, by appropriate legislation ... to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incombrance of any character; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government."
[45] Graczyk, supra, 184 Cal.App.3d at pages 1002-1004, 1008-1009, 229 Cal.Rptr. 494. We are also satisfied that the Legislature considered the potential unfairness of delays and costs in applying S.B. 899, and concluded varying limits of application is an acceptable price to pay for countervailing benefits. (McClung, supra, 34 Cal.4th at p. 476, 20 Cal.Rptr.3d 428, 99 P.3d 1015.) This is indicated by Sections 46 and 47, which apply differently but similarly preclude S.B. 899 from constituting "good cause to reopen or rescind, alter, or amend any existing order, decision, or award".

Amicus for Kleemann also argues that requiring further proceedings in these cases is inconsistent with precluding reopening, rescinding or amending an "existing order, decision, or award" under sections 46 and 47, and time limits such as the 30-day period to issue a decision after trial and submission under section 5313 (see also section 5502 which provides for mandatory settlement conferences and similar time limits depending on the circumstances).
However, Sections 46 and 47 address further litigation under sections 5410, 5803 and 5804, and the WCAB may receive medical reports as evidence either at or subsequent to a hearing under section 5703. (See also Tyler v. Workers' Comp. Appeals Bd. (1997) 56 Cal. App.4th 389, 65 Cal.Rptr.2d 431; sections 5701 and 5906.) Section 5502 also provides for admission of evidence that was unavailable or not discoverable with the exercise of due diligence.
[46] Governing Board, supra, 18 Cal.3d at pages 828-831, 135 Cal.Rptr. 526, 558 P.2d 1; People v. Bank of San Luis Obispo, supra, 159 Cal. at pages 79-80, 112 P. 866; Beckman, supra, 4 Cal.App.4th at page 489, 6 Cal. Rptr.2d 60; Graczyk, supra, 184 Cal.App.3d at pages 1006-1007, 229 Cal.Rptr. 494.