[No. C050589. Third Dist. June 30, 2006.]

SIERRA PACIFIC INDUSTRIES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, COREY CHATHAM
et al., Respondents.

1500

## Counsel

Pursley, Rush & Wesley, Roy W. Wesley and Alisha E. Pritchard for Petitioner.

Jack Perko for Gibraltar Electro Medical Services as Amicus Curiae on behalf of Petitioner.

Brissman & Associates and Jon C. Brissman for Respondent Placerville Chiropractic & Sports Clinic.

No appearance for Respondent Workers' Compensation Appeals Board and Corey Chatham.

Katten, Muchin and Rosenman, Alan D. Croll, Laurence G. Solov and Jennifer L. Lallite for West Coast Surgery Centers Management, LLC, as Amicus Curiae on behalf of Respondents Workers' Compensation Appeals Board, State of California, Corey Chatham and Lee K. Kinney.

David Bryan Leonard for California Society of Industrial Medicine & Surgery, Inc., as Amicus Curiae on behalf of Respondent Workers' Compensation Appeals Board.

## OPINION

**MORRISON, J.**—Sierra Pacific Industries (SPI) petitions for a writ of review to determine the lawfulness of an award and an order denying reconsideration in a proceeding before the Workers' Compensation Appeals Board (WCAB). Corey Chatham, a truck driver for SPI, sought adjudication of his claim after he sustained injuries when his logging truck tipped over. Most of the issues were resolved by a compromise and release; a hearing was held on the lien held by Chatham's chiropractor for chiropractic treatment. The WCAB found the treatment reasonable and necessary through February 26, 2004, and denied SPI's petition for reconsideration.

At issue is the applicability of certain provisions of Senate Bill No. 899 (2003–2004 Reg. Sess.) (Bill No. 899), which amended Labor Code section 4600 to adopt guidelines for reasonably required medical treatment. (Stats. 2004, ch. 34, § 23.) Bill No. 899 went into effect immediately as urgency legislation on April 19, 2004, (Stats. 2004, ch. 34, § 49), almost two months after the conclusion of Chatham's treatment.

We conclude the provisions of Bill No. 899 setting forth new guidelines for the determination of reasonable medical treatment apply to this case. The provisions of Bill No. 899 "shall apply prospectively from the date of enactment of this act, regardless of the date of injury . . . ." The Legislature intended to change the usual rule that the law in effect on the date of the injury controls; instead, the new provisions of Bill No. 899 apply to pending cases for which the determination of reasonable medical treatment had not yet been made. Here that determination was first made at the trial before the workers' compensation judge, after the enactment of Bill No. 899. Therefore,

the provisions of Bill No. 899 shall apply "prospectively" to that determination. We annul the decision of the WCAB.

## BACKGROUND

On September 22, 2003, Chatham was injured when the logging truck he was driving tipped over. He refused treatment at the accident scene, but went to an emergency room later that day. The doctor at the emergency room diagnosed left scalp and thigh contusions and a right shoulder sprain. He gave Chatham a prescription for ibuprofen and told him to follow up with his regular doctor.

Beginning September 26, 2003, Chatham saw Lee Kinney of Placerville Chiropractic & Sports Clinic for treatment. Dr. Kinney diagnosed cervical sprain/strain, thoracic myalgia, and left knee sprain/strain. He provided treatment every few days for several months. SPI disputed the need for continuing treatment and provided Chatham with the paperwork to select a panel-qualified medical examiner (QME) for evaluation pursuant to the provisions of Labor Code section 4062. Chatham filed an application for adjudication of his claim for workers' compensation benefits.

To resolve the dispute over medical treatment, Chatham selected QME La Relle Plubell, a chiropractor. Dr. Plubell saw Chatham on February 26, 2004. She concluded the chiropractic treatment provided by Dr. Kinney up to that date was reasonable and necessary. Dr. Plubell found no further treatment was necessary and any further treatment was Chatham's financial responsibility.

Chatham and SPI settled the dispute through a compromise and release for the payment of $4,000. Dr. Kinney requested allowance of his lien for $11,691.98.

In December 2004, Stephen Becker, a chiropractor, submitted a physician review letter. Based on his review of the medical records, he opined that only the chiropractic care and physical therapy provided on nonconsecutive days through December 3, 2003, were reasonable and necessary to treat Chatham's minor symptoms. He found the clinical basis for much of Dr. Kinney's diagnosis and treatment to be lacking. Dr. Becker relied upon the guidelines provided by the American College of Occupational and Environmental Medicine (ACOEM) in reaching his conclusions.

Trial was held before a workers' compensation judge (WCJ) on the lien of Dr. Kinney in April 2005. SPI was granted permission to depose Dr. Plubell. Dr. Plubell was aware that the ACOEM guidelines did not recommend

prolonged manipulation for longer than four weeks, so the treatment recommendations would be different under the ACOEM guidelines. She had no peer-reviewed evidence showing why the guidelines should not be followed in this case. She did not apply the ACOEM guidelines in determining reasonable and necessary treatment because she understood they applied only to injuries occurring after January 1, 2004.

In findings and order dated May 2005, the WCJ found, per stipulation of the parties, that the cascaded bill for services by Dr. Kinney from September 26, 2003 through February 26, 2004 was $6,430. The WCJ further found the treatment was reasonable and necessary through February 26, 2004; the lien was allowed.

In an opinion on the decision, the WCJ noted the ACOEM guidelines became the standard for treatment that was the subject of a utilization review process under Labor Code section 4610, subdivision (c), on January 1, 2004. Effective April 19, 2004, the ACOEM guidelines became the standard for all treatment. Since the treatment at issue was not pursuant to a utilization review process and occurred before April 19, 2004, the ACOEM guidelines were not applicable to the case. Dr. Becker's physician review letter was not done pursuant to the utilization review procedures of Labor Code section 4610. Since Dr. Becker had not examined Chatham, his letter did not constitute substantial evidence.

SPI petitioned for reconsideration, arguing the ACOEM guidelines were the proper standard for determining the reasonableness of the treatment.

Following the recommendation of the WCJ, the WCAB denied reconsideration.

SPI petitioned this court for a writ of review. This court issued the writ.

Initially, no response was filed. Then, Dr. John Mooney, doing business as Placerville Chiropractic & Sports Clinic, moved to replace Dr. Kinney with Placerville Chiropractic & Sports Clinic (PCSC) as a named defendant and for leave to file a respondent's brief. Over the objection of SPI, the motion was granted. The record supports the motion. All appearances at the lien trial for the lienholder were by PCSC. All correspondence by Dr. Kinney about the case was on the letterhead of PCSC. SPI's own paperwork on benefits indicates the provider of services was PCSC. The patient information for Chatham appears on PCSC letterhead.

Amici curiae briefs in support of the position of PCSC have been filed by West Coast Surgery Centers Management, LLC, and California Society of

Industrial Medicine & Surgery, Inc. Gibraltar Electro Medical Services filed an amicus curiae brief in support of SPI.

## DISCUSSION

The WCAB's findings on questions of fact are conclusive. (Lab. Code, § 5953.) The construction of a statute and its applicability to a given case, however, are questions of law to be determined by courts. (*Rex Club v. Workers' Comp. Appeals Bd.* (1997) 53 Cal.App.4th 1465, 1470–1471 [62 Cal.Rptr.2d 393].) While the WCAB's interpretation of the provisions of the Labor Code is entitled to respect, "if it is wrong, it is wrong, and we are not bound by it." (*Wal-Mart Stores, Inc. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 1435, 1442 [5 Cal.Rptr.3d 822].) An erroneous interpretation or application of the law is grounds for annulment of the WCAB's decision. (*Rex Club v. Workers' Comp. Appeals Bd., supra,* at p. 1471.)

Labor Code section 4600 provides that the employer shall provide the medical, surgical, chiropractic, acupuncture, and hospital treatment "that is reasonably required to cure or relieve" the injured worker from the effects of his injury. (Lab. Code, § 4600, subd. (a); all further undesignated section references are to the Labor Code.) Bill No. 899, a package of workers' compensation reforms, amended section 4600 to add new subdivision (b), which provides: "As used in this division and notwithstanding any other provision of law, medical treatment that is reasonably required to cure or relieve the injured worker from the effects of his or her injury means treatment that is based upon the guidelines adopted by the administrative director pursuant to Section 5307.27 or, prior to the adoption of those guidelines, the updated American College of Occupational and Environmental Medicine's Occupational Medicine Practice Guidelines." (Stats. 2004, ch. 34, § 23.)

Bill No. 899 went into effect immediately on April 19, 2004, as an urgency measure "to provide relief to the state from the effects of the current workers' compensation crisis at the earliest possible time." (Stats. 2004, ch. 34, § 49.)

"Generally, statutes operate prospectively only." (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840 [123 Cal.Rptr.2d 40, 50 P.3d 751].) " '[T]he "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." ' " (*Id.* at pp. 840–841, quoting *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 265 [128 L.Ed.2d 229, 252, 114 S.Ct. 1483].)

"It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such

was the legislative intent. [Citations.]" (*Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159].) " 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' [Citations.]" (*Id.* at p. 391.) Where a law makes changes relating to remedies or modes of procedure, rather than substance, the law applies to existing causes of action and defenses without having retrospective effect. "[P]rocedural statutes may become operative only when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of occurrence of the events giving rise to the cause of action. [Citation.] In such cases the statutory changes are said to apply not because they constitute an exception to the rule . . . of statutory construction, but because they are not in fact retrospective. There is then no problem as to whether the Legislature intended the changes to operate retroactively." (*Id.* at p. 394.)

■ SPI contends reimbursement for medical care is a procedural right; amended section 4600, subdivision (b) "merely affects the calculation of what treatment will be paid." The California Supreme Court, however, has held "a statute changing the measure or method of computing compensation for disability or death" is a substantive change. (*Aetna Cas. & Surety Co. v. Ind. Acc. Com., supra*, 30 Cal.2d at pp. 392–393.) In *Aetna*, the high court considered whether a 1945 amendment that permitted both temporary and permanent disability payments in some cases, instead of only the greater, applied to injuries that occurred before enactment of the amended statute. The court held the 1945 amendment "increased the amount of compensation above what was payable at the date of injury, and to that extent it enlarged the employee's existing rights and the employer's corresponding obligations. The amendment is therefore clearly substantive in character, and the commission, by applying it in the present proceedings, gave it a retrospective operation." (*Id.* at p. 392.)

Here, amended section 4600, subdivision (b) provided new guidelines for determining necessary and reasonable medical treatment. The effect of these new guidelines in this case was to reduce the amount of chiropractic treatment that would be deemed necessary and reasonable and which must be paid for by the employer. Thus, the change would affect the employee's rights and the employer's corresponding obligations. (*Aetna Cas. & Surety Co. v. Ind. Acc. Com., supra*, 30 Cal.2d at p. 392.) Since the change in the law was substantive, we must consider whether the Legislature intended it to have retrospective operation.

■ The operative effect of Bill No. 899 is set forth in an uncodified provision, section 47: "The amendment, addition, or repeal of, any provision

of law made by this act shall apply prospectively from the date of enactment of this act, regardless of the date of injury, unless otherwise specified, but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board." (Stats. 2004, ch. 34, § 47 (section 47).)

SPI contends this language requires that the provisions of Bill No. 899 be applied to all cases that are not final regardless of the date of injury. Therefore, SPI argues, the ACOEM guidelines should be applied in this case to determine whether the treatment Dr. Kinney provided was reasonable and necessary.

SPI relies on *Kleemann v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 274 [25 Cal.Rptr.3d 448] (*Kleeman*) and *Rio Linda Union School Dist. v. Workers' Comp. Appeals Bd.* (2005) 131 Cal.App.4th 517 [31 Cal.Rptr.3d 789] (*Rio Linda*), and contends those cases establish that the provisions of Bill No. 899 should be given retroactive effect to all pending cases. Both cases addressed the application of the changes Bill No. 899 made to apportionment based on causation to pending workers' compensation cases. Bill No. 899 repealed former section 4663 and added a new section 4663 and a new section 4664, which among other things required apportionment of permanent disability based on causation. (Stats. 2004, ch. 34, §§ 33–35.) In finding the new statutory scheme of apportionment applied to pending cases, both *Kleeman* and *Rio Linda* relied in part on the rule that a repeal of a statutory right is subject to different rules than the traditional law governing prospective or retroactive application of a statute. "When new legislation repeals existing law, statutory rights normally end with repeal unless the rights are vested pursuant to contract or common law." (*Kleeman, supra*, at p. 283; accord, *Rio Linda, supra*, at p. 528.)

The rule relating to repeal of statutes was applicable because "the Legislature by Bill No. 899 repealed the purely statutory right to workers' compensation for any industrial injury resulting in permanent disability because of the aggravation of a prior nondisabling disease as may reasonably be attributed to the injury." (*Rio Linda, supra*, 131 Cal.App.4th at p. 528; see also *Kleeman, supra*, 127 Cal.App.4th at pp. 284–285.) The use of the word "prospectively" in section 47 did not change the analysis because "the Legislature was only trying to clarify and or emphasize that the changes of law contained in Bill No. 899 would apply to pending cases from the date of enactment forward." (*Rio Linda, supra*, at p. 531.)

Amicus curiae West Coast Surgery Centers Management contends *Kleeman* and *Rio Linda* are distinguishable because they were based on the rule governing the repeal of statutes and here there was no repeal, only an

amendment. The rule, however, may also include amendments. "Where, as here, the Legislature has conferred a remedy and withdraws it by amendment or repeal of the remedial statute, the new statutory scheme may be applied to pending actions without triggering retrospectivity concerns [citation]; 'as a general rule, . . . a cause of action or remedy dependent on a statute falls with a repeal of a statute, even after the action thereon is pending, in the absence of a saving clause in the repealing statute. [Citations.] The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right . . . at any time.' [Citation.]" (*Brenton v. Metabolife Internat., Inc.* (2004) 116 Cal.App.4th 679, 690 [10 Cal.Rptr.3d 702].)

The determination of whether the legislative action is a repeal turns on the substance of the legislation. (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1023 [35 Cal.Rptr.3d 487].) "The pivotal issue is whether the legislation constitutes 'a substantial reversal of legislative policy' that represents 'the adoption of an entirely new philosophy' vis-a-vis the prior enactment. [Citation.]" (*Id.* at p. 1025.) While the changes to the rules of apportionment appear to reflect a new philosophy, we cannot say the same as to the amendment that changed the standards for determining reasonable medical treatment. Section 4600 still requires an employer to pay for medical treatment that is reasonably required to cure or relieve an industrial injury. The adoption of ACOEM guidelines appears to be only a recognition of changes in medical practice and procedures and the adoption of evidence-based medicine. While in this case, the new guidelines result in less treatment being reasonable, SPI has not provided the guidelines so we cannot say that in all cases only less treatment will be presumed reasonable. The amendment to section 4600 did not "abolish the right to recover." (*Callet v. Alioto* (1930) 210 Cal. 65, 68 [290 P. 438].)

Distinguishing *Kleeman* and *Rio Linda* on the basis that they involved a repeal and this case involves an amendment is not persuasive because section 47 indicates the operative effect of Bill No. 899 is the same for repeals and amendments. "The amendment, addition, or repeal of, any provision of law made by this act shall apply prospectively from the date of enactment of this act, regardless of the date of injury, unless otherwise specified, but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board." (§ 47.)

██ The usual rule is that the law in effect on the date of injury governs in workers' compensation cases because the industrial injury is the basis for the award. (*Aetna Cas. & Surety Co. v. Ind. Acc. Com., supra,* 30 Cal.2d at p. 392.) Section 47 changes this usual rule by providing that Bill No. 899

applies "regardless of the date of injury." Instead, the provisions of Bill No. 899 apply "prospectively from the date of enactment," but are not grounds to reopen, rescind, alter or amend an existing order. ▮ Thus, we interpret section 47 to require application of the ACOEM guidelines to determine reasonable medical treatment to all cases in which there is not an order as of the date of enactment of Bill No. 899.

PCSC and amici curiae contend that applying the ACOEM guidelines to medical treatment that was completed before Bill No. 899 was enacted is contrary to the express language of section 47. They contend by including the word "prospectively," the Legislature intended to distinguish between current conduct, as to which Bill No. 899 applied, and past conduct, as to which it did not. They argue that while apportionment, the issue in *Kleeman* and *Rio Linda*, may be current, completed medical treatment is definitely past conduct. They argue apportionment is not time sensitive; apportionment by causation may be made at any time. The reasonableness of medical treatment, by contrast, can be fairly made only at the time the treatment is provided, based on medical standards and practices then in effect. In this context, amicus curiae West Coast Surgery Centers Management notes that section 47 refers to "regardless of the date of injury," not regardless of the date of treatment. Amicus curiae Gibraltar Electro Medical Services argues that applying Bill No. 899 to treatment performed before the ACOEM guidelines were enacted would require physicians to be clairvoyant and thus require an impossibility contrary to the maxim of jurisprudence set forth in Civil Code section 3531.[1]

While this argument has appeal on a fairness basis, the distinction made between the changes to apportionment and the changes to the standard for reasonableness do not stand up under further scrutiny. It is true that in determining whether medical treatment is appropriate, the determination must be made based on the standards in effect when the treatment was provided. But that is not the issue here. Rather, the issue is who pays for the treatment; only if it meets the legal standard of reasonable and necessary under workers' compensation law does the employer have to pay for the treatment. Changing the standard of reasonableness after the fact has the same effect as changing the rules of apportionment; treatment that the employer was obligated to pay for when it was provided is later determined not to be the employer's responsibility, so either the employee has to pay or the medical provider is out of luck.

In support of their argument, PCSC and amici curiae cite to another uncodified section of Bill No. 899, section 46, which provides: "The repeal of

---

[1] Gibraltar Electro Medical Services takes the position that the ACOEM guidelines should not apply to treatment provided prior to January 1, 2004.

the personal physician's or chiropractor's presumption of correctness contained in Section 4062.9 of the Labor Code made by this act shall apply to all cases, regardless of the date of injury, but shall not constitute good cause to reopen or rescind, alter, or amend any existing order, decision, or award of the Workers' Compensation Appeals Board." (Stats. 2004, ch. 34, § 46 (section 46).)

PCSC and amici curiae contend section 46 expresses a clearly retroactive intent and if the Legislature intended other portions of Bill No. 899 also to be fully retroactive to all pending cases, it would not have been necessary to single out the presumption of correctness in section 46. The use of different language—"apply prospectively from the date of enactment of this act" rather than "apply to all cases"—indicates the Legislature intended different application of the provisions of Bill No. 899 other than the repeal of the presumption of correctness.

In *Kleeman*, the court indicated that section 46 and 47 apply differently. "Section 46 eliminates the treating physician's presumption of correctness in all cases, even if the presumption arose before enactment of Bill No. 899. Therefore, any effect on collateral rights or obligations must be determined as if the presumption had never been in effect. In contrast, the language in Section 47 indicates that other statutory changes such as apportionment based on causation will apply only to pending cases as of the date of enactment of S.B. 899." (*Kleeman, supra,* 127 Cal.App.4th 274, 286, fn. omitted.)

While in this case it is the collateral rights of the lienholder that are at stake, those rights are dependent on a finding of the reasonableness of medical treatment. That determination had not been made when Bill No. 899 was enacted; a "prospective" application of Bill No. 899 would apply the ACOEM guidelines to that determination. This is not a case, like the hypothetical in *Kleeman*, where the presumption had already arisen.

PCSC and amici curiae contend the rights of the lienholder are vested based on common law principles of quantum meruit. It is settled that a worker's inchoate right to benefits under workers' compensation law is not a vested right. (*Graczyk v. Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997, 1006 [229 Cal.Rptr. 494].) PCSC and amici curiae do not explain—and we do not understand—how the employee's nonvested right to reimbursement under workers' compensation law becomes a vested right when the medical provider takes a lien. The principles of quantum meruit would apply to recovery from the injured employee who received a benefit, not from the employer whose liability has yet to be determined.

Support for the argument that Bill No. 899's amendment to section 4600 should not apply to this case appears in dicta in *Green v. Workers' Comp.*

*Appeals Bd.* (2005) 127 Cal.App.4th 1426 [26 Cal.Rptr.3d 527]. At issue in *Green* was the applicability of new section 5814, which substantially reduced or eliminated the right to increased compensation where benefits had been unreasonably delayed. The *Green* court noted section 47 and its use of the term "prospectively." "If this [was] all we had, we very well might conclude uniform prospective application was the rule. However, the use of 'prospectively' in section 47 . . . is not dispositive when other language is considered. The term is almost immediately followed by the phrase 'unless otherwise specified.' New section 5814(h) is precisely a provision that 'otherwise specifies,' and thus is an exception to the prospective application of the new law." (127 Cal.App.4th at pp. 1439–1440.) New section 5814, subdivision (h) provides: "This section shall apply to all injuries, without regard to whether the injury occurs before, on, or after the operative date of this section." (Stats. 2004, ch. 34, § 43.)

We do not find the dicta regarding uniform prospective application persuasive. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945, pp. 986–988 [dicta does not have force as precedent].) It is clear, based on the "regardless of the date of injury" language, that the Legislature did not intend the usual prospective application where the law in effect on the date of injury controls. As explained above, we interpret the language of section 47 to require application of the provisions of Bill No. 899 to pending cases where the applicable decision or other action has not yet occurred.

PCSC and amici curiae, particularly California Society of Industrial Medicine & Surgery, Inc., urge that the application of the ACOEM guidelines under amended Labor Code section 4600, subdivision (b) must be determined by viewing the broader context of workers' compensation law. In particular, they cite to Senate Bill No. 228 (2003–2004 Reg. Sess.) (Bill No. 228) (see Stats. 2003, ch. 639), which introduced the ACOEM guidelines into workers' compensation law.

Bill No. 228 was enacted during a regular session in 2003 and not as an urgency statute; therefore, it became effective January 1, 2004. (Cal. Const., art. IV, § 8(c)(1).) As relevant here, Bill No. 228 added sections 4604.5, 4610, and 5307.27 to the Labor Code. (Stats. 2003, ch. 639, §§ 27, 28, 41.)

■ Section 5307.27 requires the administrative director to adopt, on or before December 1, 2004, a medical treatment utilization schedule that is based on evidence-based, peer-reviewed, nationally recognized standards of care that addresses the frequency, duration, intensity, and appropriateness of all treatment procedures and modalities commonly performed in workers' compensation cases. (Lab. Code, § 5307.27.)

■ Section 4604.5 provides that, once adopted pursuant to section 5307.27, the recommended guidelines set forth in the medical treatment utilization schedule are presumptively correct as to the extent and scope of treatment. (Lab. Code, § 4604.5, subd. (a).) The ACOEM guidelines are to be used until the medical treatment utilization schedule is adopted pursuant to section 5307.27. The ACOEM guidelines are presumptively correct as to the extent and scope of treatment from three months after their publication until the effective date of the medical treatment utilization schedule adopted pursuant to section 5307.27. (Lab. Code, § 4604.5, subd. (c).) The ACOEM guidelines were published in December 2003 and became presumptively correct March 22, 2004. (*Smith v. Churn Creek Construction* (2004) 69 Cal.Comp.Cases 1012, 1014.)

■ Section 4610 provides procedures for utilization review. Every employer is to establish a utilization review process that prospectively, retrospectively, or concurrently reviews and approves, modifies, delays, or denies medical treatment services required under section 4600. (Lab. Code, § 4610, subds. (a) & (b).) The utilization review process must be consistent with the medical treatment utilization schedule adopted pursuant to section 5307.27, and, prior to its adoption, the ACOEM guidelines. (Lab. Code, § 4610, subd. (c).) There are timelines for determining whether to approve, modify, delay, or deny requests by physicians for the provision of medical treatment services. When the determination is retrospective, the decision must be made within 30 days of receipt of the information reasonably necessary to make the decision. (Lab. Code, § 4610, subd. (g)(1).)

PCSC and amici curiae contend the amendment to section 4600 by Bill No. 899 was made simply to reflect the adoption of the ACOEM guidelines, and later the medical treatment utilization schedule of section 5307.27, by Bill No. 228. They argue the three-month delay in section 4604.5, subdivision (c) before the ACOEM guidelines become presumptively correct shows the Legislature did not intend retroactive application. Rather, the Legislature understood the need for a transition period so medical personnel could become familiar with the ACOEM guidelines.

We agree the amendment to section 4600 should be construed in light of the changes made by Bill No. 228, particularly the adoption of evidence-based medicine guidelines as establishing presumptively reasonable medical treatment. We find, however, nothing inconsistent with the provisions of Bill No. 228 and our conclusions here. Under Bill No. 228 the ACOEM guidelines became presumptively correct before the enactment of Bill No. 899. We emphasize that this case does not involve a presumption of reasonableness that arose before enactment of Bill No. 899. Rather, we are concerned only with the determination of reasonableness that was made after the enactment of Bill No. 899.

Finally, amicus curiae California Society of Industrial Medicine & Surgery, Inc. contends that even if the ACOEM guidelines apply to treatment provided before April 19, 2004, SPI lost the right to complain the treatment was not in accordance with those guidelines by failing to notify the medical provider within 30 days of receiving the information, as required by section 4610, subdivision (g). Amicus curiae contends that because PCSC did not comply with the new procedures for utilization review, it cannot challenge the reasonableness of the medical treatment. SPI first objected to the medical treatment in October 2003, before the utilization review process went into effect. At that time, SPI and Chatham proceeded with the dispute resolution process set forth in section 4062, which remains the process for dispute resolution if the utilization review does not resolve the matter. The effect of bypassing the new utilization review process was that the letter of Dr. Becker was not admissible as part of utilization review, but there was no effect on the ability of PSI to challenge the reasonableness of the medical treatment.

## DISPOSITION

The decision of the WCAB is annulled and the matter is remanded for further proceedings consistent with this opinion. SPI shall recover costs. (Cal. Rules of Court, rule 56(l).)

Sims, Acting P. J., and Cantil-Sakauye, J., concurred.

The petition of respondent Placerville Chiropractic & Sports Clinic for review by the Supreme Court was denied October 11, 2006, S145682.